## ASHUELOT NAT. BANK v. LYON COUNTY, IOWA.

(Circuit Court, N. D. Iowa, W. D. June 1, 1897.)

MUNICIPAL CORPORATIONS—VALIDITY OF BONDS—EXCESSIVE ISSUES.

Bonds of a municipal corporation, which are void because in excess of the constitutional limit of indebtedness, are not to be counted in estimating the indebtedness of the corporation, with reference to the validity of another issue of bonds, either because they were not repudiated, but were paid with the proceeds of another void issue, which were subsequently repudiated, or on the ground that the indebtedness originally paid by the proceeds of the void bonds could be enforced by the holders of such bonds by subrogation, or on the ground that a suit might have been maintained by the purchasers of the void bonds to recover back the money paid, no such suit having ever been brought.

Action on bonds and coupons issued by the county defendant under date of November 12, 1880. Tried to court.

A jury trial having been duly waived in writing, signed by the parties litigant, the evidence was submitted to the court, from which the court finds the facts to be as follows:

(1) The plaintiff corporation is a national bank created under the laws of the United States, having its principal place of business at Keene, in the state of New Hampshire.

(2) The defendant county is a municipal corporation created and organized under the laws of the state of Iowa.

(3) That the value of the taxable property within Lyon county, the defendant, for the year 1880, as shown by the state and county tax lists for that year, was the sum of $1,066,707.

(4) That on the 12th of November, 1880, the total amount of indebtedness in any form and for any purpose which the defendant county could on that day be liable for or assume was the sum of $53,335 in the aggregate; that being 5 per centum on the value of the taxable property of the county as shown by the last state and county tax lists then existing.

(5) That on the 12th day of November, 1880, the defendant county issued four negotiable bonds for the sum of $500 each, and four negotiable bonds in the sum of $100 each, all of the bonds becoming due and payable on November 12, 1890, with interest coupons attached, providing for the payment of interest semiannually at the rate of 7 per cent. per annum; that the issuance of these bonds was authorized by a resolution adopted by the board of supervisors of the defendant county adopted April 5, 1880, and when issued the bonds were duly signed by the proper officers of the county; the signature thereto being genuine, and being the signature of the chairman of the board of supervisors and of the county auditor of Lyon county, Iowa.

(6) That these bonds of November 12, 1880, aggregating the amount of $2,400, were issued for the purpose of taking up and providing means for paying outstanding floating warrants against said county of Lyon; that the bonds were sold to the plaintiff bank for full value, and the money paid therefor by the bank was used by the county in taking up outstanding warrants of the county.

(7) That on the 12th of November, 1880, when the bonds sued on were issued, and when the same were purchased by the plaintiff bank, the defendant county was indebted as follows:

For bonds then outstanding:

| | | |
|---|---|---|
| Issue of June 4, 1878 | $ 5,200 | |
| " " February 19, 1879 | 1,400 | |
| " " June 4, 1879 | 1,400 | |
| " " January 8, 1880 | 600 | |
| " " May 12, 1880 | 11,600 | |
| " " June 14, 1880 | 6,800 | |
| | | $27,000 00 |

For judgments as follows:

| | | |
|---|---|---|
| E. T. Kirk, July 24, 1873 | $2,204 23 | |
| J. H. Wagner, April 21, 1874 | 672 06 | |
| A. J. Harmon, April 21, 1874 | 381 42 | |
| Perkins Bros. Aug. 22, 1874 | 815 05 | |
| Wilson & Van Same Co., May 5, 1875 | 3,850 34 | |
| L. J. Gage, Oct. 16, 1875 | 4,460 56 | |
| C. H. Smith, Nov. 13, 1876 | 233 00 | |
| E. T. Drake, May 14, 1878 | 462 67 | |
| Swan & Fawcett, May 14, 1878 | 603 00 | |
| A. H. Andrews & Co., May 14, 1878 | 107 45 | |
| T. C. Thompson, May 14, 1878 | 304 00 | |
| Chase & Taylor, May 14, 1878 | 479 10 | |
| | | 15,772 88 |
| For warrants outstanding | | 2,400 00 |
| Total | | $45,172 88 |

(8) That under date of July 1, 1879, Lyon county issued a series of refunding bonds in the sum of $100,000, which are known as the "Shade Bonds" which were sold in the market, and the proceeds thereof were used to pay off in full $55,000 of judgment bonds issued in 1872 and 1873, and $47,300 of funding bonds previously issued, and then remaining unpaid.

(9) That the taxable value of the property in Lyon county, as shown by the proper state and county tax lists for the year 1878, was $889,757.85, and for the year 1879 was $915,133.28.

(10) That the series of bonds issued July 1, 1879, and known as the "Shade Bonds" largely exceeded in amount 5 per cent. upon the taxable property of Lyon county as the same was shown upon the proper state and county tax lists, when the bonds were issued, and the said issue of bonds was void, and not enforceable against the county.

(11) That this series of bonds of July 1, 1879, amounting to $100,000, was taken up and paid from the proceeds of the sale of a series of refunding bonds issued by Lyon county under date of May 1, 1885, the series amounting to the sum of $120,000, and the same being sold to different parties and corporations.

(12) That when this last series of bonds of May 1, 1885, was issued, the taxable value of the property situated in Lyon county, as shown by the last state and county tax lists, was the sum of $1,558,043.00, and the issue of $120,000 therefore largely exceeded 5 per cent. upon the total taxable value of the county, as shown by the tax lists, and the bonds were void, and not enforceable against the county.

(13) That the county of Lyon denies liability on the issue of bonds of May 1, 1885, and in 1890 the Aetna Insurance Company brought suit in this court upon coupons belonging to said issue of bonds of May 1, 1885, against Lyon county, and the county made defense thereto on the ground that the bonds in question were issued in violation of the provision of the constitution of the state of Iowa, limiting municipal indebtedness to 5 per cent. upon the taxable property of the municipality, and this court held that, the bonds being clearly in excess of the constitutional limitation, a recovery thereon could not be had at law, and the remedy, if any, could be had only in equity.

(14) That in 1896 a suit in equity was filed in this court by the Aetna Insurance Company and other parties, purchasers of the $120,000 of bonds issued by Lyon county, under date of May 1, 1885, against the defendant county, in which the complainants seek to hold the county liable for the money received

by the county from the sale of said bonds, which suit is now pending and undetermined.

(15) That on November 12, 1880, when the bonds sued on were issued, and when they were sold to plaintiff, the valid and enforceable indebtedness of the county of Lyon did not exceed the sum of $46,000, leaving out of computation the Shade bonds, and any liability based upon the payment to the county of the money paid therefor.

J. M. Parsons, for plaintiff.

N. T. Guernsey, A. Van Waganen, H. C. McMillan, and Simon Fish, for defendant.

SHIRAS, District Judge (after stating the facts as above). From the foregoing findings of fact it appears that the only question for determination is whether on the 12th day of November, 1880, when the bonds now sued on were issued, the defendant county was indebted in any form or for any purpose in an aggregate amount so large that, if added to the amount of the bonds then issued, it would cause the indebtedness of the county to exceed 5 per cent. of the then taxable property of the county; that being the limit fixed by the constitution of the state of Iowa upon the debt-creating power of the county. If the issuance of the bonds caused the indebtedness of the county to exceed the constitutional limit, then the bonds are void, and cannot be made the basis of a recovery against the defendant county. Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220. The facts show that on the 12th day of November, 1880, the total indebtedness which could be lawfully created by the county could not exceed the sum of $53,335, and the question is whether the facts show that the issuance of the $2,400 of bonds now sued on was illegal because the county was then liable to an indebtedness which reached or exceeded the legal limit, or approached it so nearly that the issuance of the bonds caused the total indebtedness to exceed the limit. According to the evidence, there was on the 12th of November, 1880, valid indebtedness existing against the county as follows: For bonds, $27,000; on judgments, $15,772,88; and on warrants, $2,400; or, in the aggregate, a total of $45,172.88. In addition to this sum, there was in existence the series of bonds issued under date of July 1, 1879, known as the "Shade Bonds," amounting to the sum of $100,000, and the crucial point in this case is whether these bonds can be held to be a liability of the county, which must be considered in determining the amount of indebtedness existing against the county on the 12th of November, 1880.

The constitutional limitation which is relied on as defense in this case is intended to prevent the overburdening of property within the municipalities of the state by debts created by the corporate authorities, and the prohibition of the constitution extends to all forms of indebtedness, and the true inquiry in each case is whether, at the given date, there exists indebtedness in any form up to the limit for which the municipality can be held liable at law or in equity. Whatever the form of the indebtedness may be, if it can be enforced by a court of law or equity, it certainly comes within the constitutional provision; but, on the other hand, claims which cannot be thus enforced, and which are not binding upon the mu-

nicipality, do not come within the meaning of the term "indebtedness" as used in the constitution of the state. Under the facts existing in this case it is shown that when the Shade bonds were issued, in July, 1879, the series was issued in contravention of the constitutional limitation, and hence under the ruling of the supreme court in Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, these bonds could not be enforced at law or in equity against the county, and hence it is clear the bonds, as such, did not, in fact, create a burden of indebtedness upon the property of the county. It is urged in argument that the county, however, never repudiated these bonds, but paid them, in 1885, from the proceeds realized from the sale of the series of bonds for $120,000 dated May 1, 1885. If this last series of bonds was valid or enforceable, or, if the county had paid the Shade bonds out of money realized from the property of the taxpayers of the county, there might be equity in the contention, but the evidence shows that the Shade bonds were paid from the money realized from the sale of another series of void bonds, which the county now repudiates, and refuses to pay. Even if it be held that practically, though not directly, the Shade bonds were merged in or exchanged for an equal number of the bonds of May 1, 1885, the latter, being also void, did not create an indebtedness against the county, and the county, when sued thereon, by the holders thereof, successfully defended against them. The invalidity of the Shade bonds was not obviated by merging them, directly or indirectly, in the series of May 1, 1885, because the latter series was in itself a void issue, and none of the bonds of these two series created any valid or enforceable indebtedness against the county. It is, however, further contended that the invalidity of these two series of bonds does not necessarily destroy all remedy against the county for the indebtedness which was in law paid off by the money realized from the sale of these void bonds; that relief might be sought in forms other than by suit on the bonds, and that it may, therefore, be true that a liability exists against the county, it being further claimed that a suit in equity is now pending in this court, on behalf of the parties purchasing the series of bonds dated May 1, 1885, in which it is sought to hold the county liable for a large sum. In the case of Louisiana v. Wood, 102 U. S. 294, the supreme court held that where a city, having authority to borrow money, issued bonds and sold them, but the bonds were illegal and void because not properly registered, a suit to recover back the money paid for the bonds, in the nature of an action for money had and received, could be maintained. If it be assumed that the principle recognized and enforced in the case just cited is applicable to the recovery of money paid for the whole or a part of a series of bonds, which are void because in excess of the constitutional limit, strict regard must be paid to the cause of action which it is sought thus to enforce. In that class of cases it is the payment of money by one party and the receipt of it by another, upon a consideration which fails, that give rise to the implied promise or duty to repay or restore that which was received without consideration, which implied promise is the basis of the action. In the case at bar, when the Shade bonds were issued and

sold, and the proceeds were used in paying pre-existing bonded and judgment indebtedness of the county, the utmost that could be claimed on behalf of the purchasers of these void bonds would be that, having been induced to part with their money without consideration, they were entitled to recover back the money paid by them up to the constitutional limit of indebtedness. These purchasers could not be subrogated to the rights of the creditors of the county, whose debts were paid by use of the money realized from the sale of the bonds. These debts were absolutely paid, and no longer constituted claims against the county, and the bond purchasers were not entitled to be subrogated to the position held by these creditors prior to the payment of the claims due them. They did not pay the claims due these creditors, but bought the bonds of the county, paying the money to the county; and the debts paid off by use of the money were not liens or claims which could have been used to the detriment, in any sense, of the bond purchasers in case they had not bought the bonds of the county. The bond purchasers, so far as these pre-existing claims are concerned, were purely volunteers, and could not, therefore, be subrogated to the rights of the creditors whose debts were extinguished by use of the money paid to the county by the parties taking the bonds. Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625. The sole remedy, if any exists, in favor of the purchasers of the Shade bonds, was the bringing a suit at law or in equity as the situation might require, to recover back the money by them paid for the void bonds. In fact these parties did not bring such an action in any form, and their bonds were afterwards paid off by money realized from the sale of the void series of bonds dated May 1, 1885. The purchasers of this last series of bonds cannot be held entitled to subrogation to the rights of the purchasers of the Shade bonds, for the reason that they did not purchase them, and as to them they must be held to be mere volunteers within the ruling of the supreme court in Insurance Co. v. Middleport, just cited. If any right against the county can be successfully asserted by the purchasers of the series of $120,000 of bonds issued in 1885, it can only be based upon the implied promise or duty arising out of the payment by them of money to the county, in the expectation of receiving valid bonds, and the failure on part of the county to deliver valid bonds. This liability, as it now exists, had no existence in any form until in 1885, and its creation in that year cannot be relied on to defeat indebtedness evidenced by bonds issued in 1880. The burden of proving the facts necessary to sustain the defense relied on in this case, to wit, that when the bonds sued on were issued and sold the indebtedness of the county was so great that the issue of the bonds carried the amount beyond the constitutional limit, is upon the defendant. The bonds themselves do not amount to a sum in excess of the limit, thereby charging the purchasers with notice of the invalidity of the series, as was the fact in Doon Tp. v. Cummins, supra.

To maintain the defense pleaded in this case, it must be made to appear that when the bonds sued on were issued and sold the indebtedness existing against the county equaled or exceeded the sum

of $50,935, and, as already stated, the indebtedness of the county did not equal or approach this amount, if the Shade bonds and the money realized therefrom be excluded from the computation, and hence to maintain the defense it must be shown that an enforceable liability existed against the county by reason of the issuance of these bonds, or by reason of the receipt of the money received by the county from the sale thereof. The facts show that the bonds themselves were void, and hence created no indebtedness on part of the county. The contention on part of the defendant is that a claim might have been asserted against the county for money had and received, but this claim would also be subject to the defense that it could not be enforced without creating an indebtedness in excess of the 5 per cent. limitation, for the constitutional prohibition is operative against all forms of indebtedness, including those based on implied promises as well as those arising upon express contracts. Therefore the mere fact that the county received $100,000 in money from the sale of the Shade bonds did not create an indebtedness against the county, in view of the constitutional prohibition.

In the equity case of Aetna Ins. Co. v. Lyon Co., now pending in this court, a recovery is sought on behalf of the purchasers of the $120,000 of bonds issued in 1885 upon the grounds that the money was paid for the bonds in reliance upon the promise of the county to give valid bonds therefor; that the bonds issued are void because in excess of the 5 per cent. limitation; that the duty rests upon the county of repaying the money received by it upon sale of the void bonds; that this duty can be enforced subject to the constitutional limitation that the county indebtedness cannot exceed 5 per cent. of the taxable valuation of the property in the county; that in ascertaining the amount for which the county can be lawfully held, the court can ascertain what sum of pre-existing valid indebtedness was paid off by the money received from the sale of the invalid bonds, and this sum will not be counted as an existing indebtedness when ascertaining the sum for which the county can be held liable. The defendant county in that case is resisting the claim thus asserted, but in this case it takes the position that in 1880 the purchasers of the Shade bonds might have asserted a similar claim, and, therefore, the amount received from the sale of the Shade bonds must be held to be an indebtedness against the county in 1880, and therefore is to be computed in determining the amount of existing indebtedness due and owing by the county when the bonds now sued on were issued and sold. The difficulty with this position is that, so far as this case is concerned, it is based upon mere possibilities and surmises. No claim of the kind has been asserted on behalf of the holders of the Shade bonds. If it had been, it cannot be known whether the claim would have been sustained, nor for what amount. It never was asserted in any form, and therefore, in fact, no enforceable burden of indebtedness has resulted therefrom upon the property of the county. It cannot be the law that a claim which never was asserted, which cannot now be asserted, and which has cast no burden upon the property of the county, can be held to be an indebtedness within the meaning of the constitutional provision.

As shown in evidence, the Shade bonds were paid off by money realized from the sale of the $120,000 of bonds issued in 1885, and the county has since successfully resisted the collection of these bonds on the ground that they are void, and do not constitute a valid indebtedness from the county. The facts do not make a case wherein the county had recognized the Shade bonds as valid, and had paid them off in such a mode as to thereby create a burden upon the property of the county. In such a case, it might well be that the burden thus cast upon the property of the county should be deemed an indebtedness, even though the bonds thus paid were void, and a defense thereto might have been maintained.

The purpose of the constitutional limitation is to prevent the property of the municipality from being burdened at any one time with an indebtedness exceeding 5 per cent. upon the taxable valuation thereof, and therefore that which results in fastening upon the property of the county a claim which can be enforced must be held to be an indebtedness within the meaning of the constitution, while, on the other hand, that which cannot be enforced at law or in equity against the county, and which has not been so treated or dealt with by the county, as to subject the property thereof to the burden of payment cannot be held to be indebtedness within the constitutional provision. The evidence in the case shows that the Shade bonds were invalid and void when issued in 1879, and therefore, when the bonds now sued on were issued in November, 1880, the Shade bonds, being void, created no indebtedness on part of the county, and therefore cannot be computed as an indebtedness in determining what amount the county then owed; and the fact that subsequently these void bonds were paid off by money obtained from the sale of another series of void bonds which the county has since repudiated cannot be availed of as a defense to the bonds now sued on, for the reason that such mode of payment did not create a valid indebtedness against the county, nor fasten upon the property of the county any burden or liability whatever. Under these circumstances it must be held that the county has failed to show that on November 12, 1880, when the bonds sued on were issued, it was then indebted in a sum which prohibited it incurring a further indebtedness to the amount of $2,400, and has, therefore, failed in showing a good defense to the action. Judgment will therefore be entered for the plaintiff for the sum due upon the bonds sued on.