LYON COUNTY v. ASHUELOT NAT. BANK OF KEENE, N. H.

(Circuit Court of Appeals, Eighth Circuit. May 9, 1898.)

No. 1,024.

1. COUNTIES—LIMITATION UPON INDEBTEDNESS—EXCESS.

Bonds issued by a county in violation of a provision in the state constitution, limiting the indebtedness of counties to a certain proportion of the value of their taxable property, constitute no enforceable obligation of the county; and bonds subsequently issued, at a time when such issue did not bring the total indebtedness of the county, excluding the invalid bonds, up to the constitutional limit, are valid, although the county may afterwards voluntarily pay the invalid bonds. 81 Fed. 127, affirmed.

2. SAME—INVALID BONDS—VOLUNTARY PAYMENT—SUBROGATION.

Where invalid county bonds are voluntarily paid by the county, the funds being secured by sale of other similar bonds, which are subsequently repudiated for the same illegality, equities, if any existed, of the holders of the first issue, are extinguished by the payment, and the holders of the second issue cannot be subrogated thereto. 81 Fed. 127, affirmed.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

E. C. Roach and E. Y. Greenleaf (Simon Fisher on brief), for plaintiff in error.

J. M. Parsons, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge. This action was brought to recover the amount of eight bonds of the defendant county, issued and dated November 12, 1880, and payable on or before November 12, 1890, four being for the sum of $500 each, and four for the sum of $100 each, together with the last eight coupons for the semiannual interest at 7 per cent. on each of the said bonds. These bonds purport to have been issued by the board of supervisors of said county of Lyon, under legislative authority referred to in the recitals, and in conformity with a resolution of said board of April 5, 1880. The coupons were paid by the county as they matured, to and including those which came due November 12, 1886. The execution of the bonds, and the sale and delivery of them to the plaintiff, for full consideration received by the county, is not questioned; and the only defense urged is that the bonds were, in their inception, illegal and void, and issued in contravention of section 3 of article 11 of the constitution of the state of Iowa, which ordains:

"No county or other political or municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount in the aggregate exceeding five per centum of the value of the taxable property within

such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

The findings of fact by the court upon the trial of this cause, set out in the record, and reported in 81 Fed. 127, show that on July 1, 1879, Lyon county issued a series of refunding bonds, commonly known as the "Shade Bonds," in the sum of $100,000, which were sold, and the proceeds used to pay in full $55,000 of judgment bonds, and $47,300 of refunding bonds previously issued by the county, and till then unpaid. As the taxable value of the property in Lyon county, as shown by the state and county tax lists for the year 1879, was $915,133.28, and a less amount for the year 1878, it was conceded by counsel for the defendant on the argument that the finding of the court below that these Shade bonds were void and unenforceable against the county, because their issue was in plain contra-. vention of the constitutional limitation, was correct. From this concession the conclusion inevitably follows that these bonds constituted no indebtedness of the county. Indeed, this conclusion is simply another form of stating the proposition conceded.

The findings further show that the value of the taxable property of Lyon county, as shown by the proper tax lists for the year 1880, was $1,066,707. Therefore, on November 12, 1880, when the bonds in suit were issued, said county could, within said constitutional limitation, lawfully have and contract indebtedness to the amount of $53,335. On that day, and prior to the issue of bonds to the amount of $2,400, being the bonds in suit, the indebtedness of said county (disregarding said Shade bonds) consisted of outstanding bonds to the amount of $27,000, judgments to the amount of $15,772.88, and warrants to the amount of $2,400,—an aggregate of valid indebtedness amounting to $45,172.88; so that, when the bonds in suit were issued on that day, they did not increase the indebtedness of said county up to the constitutional limit. The bonds in suit were therefore valid when issued and sold to the plaintiff; and no subsequent action of the county in respect to its obligations, legal or moral, could affect their validity. The fact that the Shade bonds, which were not obligatory on the county, and, which its counsel upon the argument here admits, were not enforceable at law, were afterwards voluntarily paid by the county, was commendable, as the county had received full consideration for them; but such voluntary payment cannot relate back, and give any validity to the Shade bonds, as of any date prior to such payment, nor so as to render illegal the bonds in suit, which at all times before such payment were perfectly valid. The fact that the Shade bonds were not paid from the taxes or funds of the county, but from moneys obtained by it from financial institutions, whom its officials duped into purchasing a later like illegal issue of bonds of the county, to the amount of $120,000, which the county now repudiates, may lessen the commendation it would otherwise be entitled to for acknowledging its moral obligation in respect to the Shade bonds, but cannot otherwise affect this case. If the holders of the Shade bonds had any enforceable equitable rights against the county, such rights were extinguished by the payment of those bonds; and we agree with the learned judge, whose decision

we are reviewing, that the purchasers of the last issue of bonds cannot be subrogated to the rights and equities, if any, of the holders of the Shade bonds. Ætna Life Ins. Co. v. Town of Middleport, 124 U. S. 534, 8 Sup. Ct. 625.

Even if the county, since the issue and sale of plaintiff's bonds, by its voluntary payment of the Shade bonds with the money received from the last issue of bonds, has given rise to any enforceable equity in favor of the purchasers of that last issue, then, as there was no transfer by subrogation of the previous equities of the holders of the Shade bonds, the equities of the holders of such last issue must rest upon facts and transactions subsequent to the issue of plaintiff's bonds, which are therefore not affected by such equities. The judgment of the circuit court is affirmed.