## THOMPSON v. SEARCY COUNTY.

## SEARCY COUNTY v. THOMPSON.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1893.)

### Nos. 245, 264.

1. COUNTIES—CONTRACTS—VALIDITY—EXCESSIVE PRICE—DAMAGES.

In a suit on county warrants issued pursuant to the orders of the county court, in compliance with the provisions of a valid contract for the erection of a courthouse, and for the precise amount which the county had agreed to pay, the county, in the absence of fraud in obtaining the contract, and of proof that the work was not done in compliance with the specifications, is not entitled to a deduction from the contract price, or to insist that the damages be assessed as upon a quantum meruit, merely because the courthouse when completed was worth only one-third of the contract price. Shirk v. Pulaski Co., 4 Dill. 209, 211, distinguished.

2. SAME—EXCEEDING APPROPRIATION—ARKANSAS STATUTE.

Under Mansf. Dig. Ark. § 1451, providing that no agent of any county shall make any contract on behalf of the county unless an appropriation has been previously made therefor, and is wholly or in part unexpended, a contract for the erection of a county courthouse for an agreed price of $29,000 is binding upon the county although only $2,200 had been previously appropriated therefor. Hardware Co. v. Erb, 17 S. W. Rep. 7, 54 Ark. 645, followed; Worthen v. Roots, 34 Ark. 356, distinguished.

3. SAME—ACTIONS ON COUNTY WARRANTS.

County warrants issued to pay for public works in Arkansas are not negotiable instruments, in the full sense of the law merchant, but are mere prima facie evidences of a valid claim, and the statute of limitations begins to run against them upon delivery. A suit can therefore be maintained on such warrants, whether an appropriation adequate to

pay them has been made or not. Wall v. County of Monroe, 103 U. S. 74, and Crudup v. Ramsey, 15 S. W. Rep. 458, 54 Ark. 168, followed.

4. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

With respect to the interpretation of state statutes regulating the making of contracts by counties, the decisions of the state courts are binding upon the courts of the United States.

5. SAME—JURISDICTION—COUNTY WARRANTS PAYABLE TO A. B., OR BEARER—ACT MARCH 3, 1887.

A county warrant made payable "to A. B., or bearer," is legally equivalent to one made payable simply "to bearer," and, under Act March 3, 1887, (1 Supp. Rev. St. 611,) the assignee thereof may maintain an action thereon in a federal court, without reference to the citizenship of A. B., if the other requisite jurisdictional facts appear.

6. SAME—ARKANSAS STATUTE—CLAIMS AGAINST COUNTIES.

St. Ark. Feb. 27, 1879, requiring all persons having claims against a county to present them for allowance to the county court, does not deprive nonresident creditors of their right to sue the county in a federal court. Chicot County v. Sherwood, 13 Sup. Ct. Rep. 695, 148 U. S. 529, followed.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

At Law. Action by William H. Thompson against Searcy county, Ark., to recover upon certain county warrants. The cause was tried without a jury, and judgment was given for plaintiff. Both parties bring error. Reversed on plaintiff's exceptions.

Statement by THAYER, District Judge:

This is a suit on county warrants aggregating $24,000, which were issued by Searcy county, Ark., during the years 1888, 1889, and 1890, for building a courthouse.

Under the constitution of the state of Arkansas, the justices of the peace of each county, or a majority of them, sit with the county judge for the purpose of levying county taxes, and making appropriations for county expenses, and, when thus sitting, the tribunal thus constituted is ordinarily termed the "Quorum Court;" but for the purpose of auditing claims against the county, entering into contracts in its behalf, and attending to all other matters relating to county affairs, the county judge sits alone, and constitutes the county court. Const. Ark. art. 7, §§ 28, 30; Worthen v. Badgett, 32 Ark. 496–522.

At a session of the quorum court of Searcy county, held in October, 1887, that body made an appropriation in the sum of $2,200 towards building a courthouse. At the January session, 1888, the county court of said county, in view of such appropriation, ordered the erection of a courthouse at the county seat, and appointed a commissioner of public buildings to draw plans and specifications for such a structure. Subsequently the plans devised by such commissioner were approved by the county court, and a contract was thereupon entered into on April 2, 1888, with McCabe & Greenhaw, for the erection of a courthouse in accordance with the plans of the commissioner, at a cost of $29,000, they being the lowest responsible bidders for the erection of the building. At various times thereafter during the erection of the building the quorum court made further appropriations for the construction of the courthouse, the whole of such appropriations, including the first, aggregating $11,400, and no more. At various times during the progress of the work the county court likewise ordered warrants to be drawn on the county treasurer in favor of the contractors, until the contract price was thus liquidated.

The case was tried in the circuit court, without a jury, and the trial judge made a special finding of the facts, embodying substantially the facts above stated. He further found "that said contract for building said courthouse was duly advertised, and that the proceedings prior to and including the letting of said contract, and giving bond by the contractors, were in accordance with the statute in such case made and provided, and that the work on said courthouse was done in accordance with the plans and specifications and terms of

said contract, excepting one change, which was made by order of said county court, held by said county judge, on the recommendation of said commissioner, at an additional price of $4,000, which was completed as agreed upon, and was accepted by said county court; that this made the sum total of the price of said work done by said contractors $33,100, for all of which county warrants were issued to said contractors, jointly or severally; that the warrants sued on amount to the sum total of $24,000; and that they are a part of the warrants issued to said contractors for building said courthouse." The circuit court further found "that at the time said courthouse was completed it was really worth no more than $11,000," and that of the warrants drawn on the treasurer the county had redeemed warrants to the amount of $5,900 before the present suit was brought. The trial court also found "that since 1886, and to the present time, there has been no money in the county treasury, and that during all this time the constitutional limit of county taxation had been levied and appropriated, and that none has been appropriated for building said courthouse, except as above stated."

As a conclusion of law the circuit court adjudged that the plaintiff below was entitled to recover 33⅓ per cent. of the face value of the warrants by him owned and held, and in accordance with that view it entered a judgment against the county in the sum of $8,000. Both parties to the suit have excepted to the action of the lower court, and have respectively sued out a writ of error.

U. M. Rose, H. M. Hill, W. E. Hemingway, and G. B. Rose, for plaintiff.

Eben W. Kimball, for defendant.

Before SANBORN, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff below has assigned for error that the circuit court erroneously permitted the defendant county to produce evidence tending to show that the courthouse, for the building of which the warrants in suit were issued, was not worth more than $11,000 when completed. He further complains that the circuit court erred in declaring the law as follows:

"The plaintiff in this case is entitled to recover only the legal, ordinary, and customary price for building such a courthouse, estimating a dollar in county warrants at par with a dollar of lawful currency of the United States, and to be prorated upon the amount of warrants sued on."

And that it also erred in refusing to give the following declarations, which were asked by the plaintiff:

"(1) Though the courthouse, for the building of which the warrants sued on were issued, cost more than it was worth after it was built, yet, in the absence of fraud in procuring the contract under which said warrants were issued, or in procuring the issue of the same, the court should find in favor of the plaintiff for the full value of the warrants sued on.

"(2) This is not a suit that, in the absence of fraud, involves either the cost or the value of the courthouse for which the warrants sued on were issued; and, if the court finds that the contract for building the courthouse was legally let to the contractors as the lowest bidders, at a fixed price, that the work was done according to the contract, and that the warrants sued on were issued in payment of said work, then the court, in the absence of any proof of fraud on the part of said contractors, will find in favor of the plaintiff for the value of said warrants."

We are satisfied, by an inspection of the record, that the errors thus complained of are of such character as will necessitate a reversal of the case. The suit is founded upon warrants which were issued pursuant to orders of the county court, in compliance with the provisions of the contract for the erection of a courthouse, and for the precise amount which the county had agreed to pay for the erection of the building. Under these circumstances, the county is not entitled to a deduction from the contract price, or to insist that the damages shall be assessed as upon a quantum meruit, unless it can show, either that the work was not done in compliance with the specifications of the contract, or that the contractors were guilty of some fraud in procuring the contract to be entered into, on account of which the warrants were issued. But neither of the conditions last mentioned as entitling the county to a deduction from the contract price is disclosed by the record. It was expressly found by the trial judge that the work was done by the contractors "in accordance with the plans and specifications, excepting one change, which was made by order of the county court;" and there is no plea or finding which shows that the contractors were guilty of any fraud in obtaining the contract, except the statement that the courthouse when completed "was really worth no more than $11,000." In opposition to this finding it further appears, however, from the special verdict, that the contract for the building of the courthouse was entered into after sealed proposals for the erection of such a building had been solicited by public advertisement, in the manner provided by law, and that the contract was let to the lowest responsible bidder. The most that the record discloses is that the county, for some reason, agreed to pay more for the building than it was really worth when completed. It fails to show that the contractors by whom the work was done were guilty of any trick or artifice tantamount to a fraud, in obtaining such a contract, which entitles the county to a deduction from the contract price. There are indications contained in the record that the action of the circuit court, which is now under consideration, was induced by the decision in Shirk v. Pulaski Co., reported in 4 Dill. 209, 211, and an attempt is made to support the action of the trial court on the strength of that decision. It will be observed, however, that in Shirk v. Pulaski Co. the plea which was interposed by the county showed the following facts: that the warrants of the county had become greatly depreciated in value; that to make up for such depreciation, and to secure to certain county officers the full payment of their legal fees, by a sale of their warrants, the county court had issued warrants to such officers for five and ten times the amount of their respective demands. This practice seems to have been adopted in pursuance of an agreement between the board of supervisors and the various creditors of the county, and was no doubt a clear evasion of the laws of the state regulating the issuance of county warrants. The court held that warrants issued under such circumstances were voidable; but, as they had passed into the hands of innocent purchasers for value, the court further determined to

treat the holders of such warrants as the equitable assignees of the claims against the county, on account of which the warrants had been drawn, and to permit a recovery against the county to the amount of such claims, and no more.

Without impugning the decision in Shirk v. Pulaski Co., it is sufficient to say that we discover nothing in that case which tends to support the action of the circuit court in scaling the warrants that are involved in the case at bar. It was not alleged in the present case, neither was it proven, that, in pursuance of an unlawful arrangement between the county court and the contractors, a bid was made and accepted for the construction of the courthouse, at a price known to be three times in excess of its actual value, for the purpose of covering a known or possible depreciation in the value of the county warrants with which the claim of the contractors was to be paid. The record simply discloses that the county made a bad bargain, but it fails to show that the contractors are in any respect responsible for such a result. The action of the circuit court in admitting testimony as to the reasonable value of the courthouse, and in declaring that the plaintiff was only entitled to recover such reasonable value, and in refusing the two declarations of law asked by the plaintiff, was erroneous, and in consequence of such errors the case must be reversed.

We have next to consider some of the errors that have been assigned in support of the writ of error which is prosecuted by the defendant county. The most important of these assignments is the contention of counsel that the warrants sued upon should have been adjudged void; because the county court had no authority under the laws of Arkansas to enter into a contract for the erection of a courthouse at a cost of $29,000 at a time when the quorum court had only appropriated $2,200 toward the erection of such a building. It is not denied that it was the exclusive function of the county court, when held by the county judge, to enter into contracts for the erection of county buildings; but it is insisted that, under the laws of the state of Arkansas, it had no right to enter into a contract for the building of a courthouse at a cost exceeding the sum that had been appropriated by the quorum court for the erection of such a structure.

This contention on the part of the county seems to be mainly based on the decisions of the supreme court of Arkansas in Worthen v. Roots, 34 Ark. 356, 369, and Lawrence Co. v. Coffman, 36 Ark. 641, 646. We fail to find anything in Worthen v. Roots that is tantamount to an authoritative declaration that a county court can in no case enter into a contract in behalf of a county that will require an expenditure in excess of an appropriation that may at the time have been made by the quorum court. There is a dictum to that effect, however, in Lawrence Co. v. Coffman, but the question was not involved in that case, and for that reason the decision cannot be regarded as establishing the proposition that contracts cannot be made by a county court in excess of existing appropriations. On the other hand, in a later case, (Hardware Co.

v. Erb, 54 Ark. 645, 659, 17 S. W. Rep. 7,) the supreme court of that state had occasion to construe the statute on which the present contention in behalf of the county is based, and in so doing it appears to have overruled the views intimated in Lawrence Co. v. Coffman. The statute is as follows:

"No county court or agent of any county shall hereafter make any contract on behalf of the county, unless an appropriation has been previously made therefor, and is wholly or in part unexpended." Mansf. Dig. § 1451.

In speaking of the statute, and its proper interpretation, the court, in Hardware Co. v. Erb, which involved an appropriation for a county bridge, made use of the following language:

"It is the policy of the act to require the concurring judgment of the levying [quorum] court and of the county judge that a bridge should be built, before a contract for building it can be made. When the levying court makes an appropriation to pay for one, that signifies its favorable judgment, and the county judge may afterwards signify his by letting the contract. * * * While we think that a contract cannot be made before there has been an appropriation for it, we do not think that, when an appropriation has been made, the contract will be limited to the amount appropriated. When the levying court appropriates any sum for the work, that signifies their judgment that the work should be done, and the county judge may then proceed to contract for it without further consulting them; the only limitations upon his power being found in other directions."

The views thus expressed relative to the proper interpretation of the statute seem to be sound, in view of the fact that, under other provisions of the laws of Arkansas, the quorum court only has power to make appropriations "for the expenses of the county or district for the current year." Mansf. Dig. § 1448. If it was held that the county court could not enter into a contract involving an expenditure in excess of an existing annual appropriation, it might seriously embarrass the county in prosecuting necessary public works of such magnitude that they could only be paid for out of the revenues of the county for successive years. But, be this as it may, we think that the decision in Hardware Co. v. Erb is an authoritative exposition of the purpose of the statute in question, and, being a matter of local law, we are constrained to adopt the views therein expressed. It follows that no error was committed by the circuit court in refusing to hold that the warrants were void, because the contract for the erection of a courthouse at a cost of $29,000 was in violation of law.

It is further assigned that the circuit court erred in overruling a demurrer, which was interposed by the county, to the complaint on which the case was tried. The demurrer appears to have been mainly grounded on the fact that the warrants set out in the complaint directed the county treasurer to pay them "out of any money in the treasury appropriated for building a courthouse," and that the complaint did not aver that any appropriation had been made; hence it is argued that the complaint did not show that the warrants were due and payable, and for that reason did not state a cause of action. With reference to this contention it is to be observed that it has been held that warrants such as these issued in the state of Arkansas are not negotiable instruments in

the full sense of the law merchant, and that the rules applicable to negotiable paper are not strictly enforced with reference to such instruments. They are mere evidences of indebtedness issued by that branch of the county government whose function it is to audit and allow claims against the county, and, when thus issued, they are prima facie evidence that the claim is valid, and is likewise due and payable. Wall v. County of Monroe, 103 U. S. 74, 77; County of Ouachita v. Wolcott, 103 U. S. 559; Mayor v. Ray, 19 Wall. 468, 477.

It is also the settled law of Arkansas that warrants such as these may be barred by the statute of limitations, and that the statute of that state barring suits on written instruments, not under seal, after the lapse of five years, begins to run as against a county warrant upon its delivery to the person in whose favor it is drawn. Crudup v. Ramsey, 54 Ark. 168, 15 S. W. Rep. 458; Goldman v. Conway Co., 10 Fed. Rep. 888. And in the case of Crawford Co. v. Wilson, 7 Ark. 214, it was taken for granted that the holder of county warrants issued for building a courthouse could maintain an immediate suit thereon against the county, and reduce the audited demand to a judgment, although the particular fund on which the warrants were drawn was exhausted.

In view of these rulings we conclude that a suit could be maintained on the warrants as soon as they were delivered to the contractors, without reference to the question whether the fund against which they were drawn had or had not been depleted. It would be the height of injustice to hold that a suit could not be maintained on the warrants, for the purpose of reducing them to a judgment, until there was an appropriation adequate to pay them, and, at the same time, to hold that, without reference to an appropriation, the statute of limitations begins to run from the date of delivery. It is clear, we think, that no error was committed in overruling the first point of demurrer.

It is equally clear that the second point of the demurrer was untenable. The warrants in suit were made payable to "G. B. Greenhaw, or bearer." The suit thereon is brought by an assignee thereof, who is a citizen of Missouri, and it is contended that the suit was not within the jurisdiction of the circuit court, under that clause of the first section of the judiciary act of March 3, 1887, relating to suits by assignees of choses in action, because they were not made payable simply "to bearer." 1 Supp. Rev. St. U. S. pp. 611, 612. In other words, a distinction is attempted to be drawn between an instrument payable to a particular person "or bearer" and one that is payable simply "to bearer;" the argument being that the former class of instruments are not within the exception mentioned in the statute, as construed in Wilson v. Knox Co., 43 Fed. Rep. 481, while the latter class are. The statement of the point thus raised by the county is its own refutation. A warrant made payable "to A. B., or bearer," is for all practical purposes, and in legal effect, the equivalent of one made payable simply "to bearer;" and, under the judiciary act of March 3, 1887, an assignee may maintain an action in the national courts on a warrant

drawn in one form, as well as the other, if the other requisite jurisdictional facts appear.

Another assignment which is argued at some length by the county is to the effect that the circuit court erred in holding that a suit could be maintained on these warrants in the United States circuit court, notwithstanding the provision of a statute of Arkansas approved on February 27, 1879, which repealed all previous acts authorizing counties of the state to be sued, and required all persons having demands against a county to present them for allowance to the county court. Mansf. Dig. p. 350, and notes. This proposition is met and overcome by a recent decision of the supreme court of the United States in Chicot Co. v. Sherwood, 148 U. S. 529, 13 Sup. Ct. Rep. 695, wherein it is held that the statute in question is not adequate to deprive nonresident creditors of a county of their right to sue the county in the national courts, when the amount is sufficient to invoke their jurisdiction.

We have thus reviewed all of the important errors assigned by the county, and find them to be without merit, wherefore the action of the circuit court must be affirmed, with respect to all of those rulings as to which the county has excepted; but for errors prejudicial to the plaintiff, as heretofore indicated, the judgment of the circuit court is reversed, and the cause is remanded, with directions to grant a new trial.