### CONDON v. CITY OF EUREKA SPRINGS, ARK.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. February 10, 1905.)

1. STATUTES—CONSTITUTIONALITY OF REPEAL—VESTED RIGHTS.

Act Ark. Feb. 27, 1875 (Acts 1874–75, p. 189), authorized cities to call in outstanding warrants, and to reject such as were spurious, and to reissue those found to be genuine; but, as construed by the Supreme Court of the state, it gave a city no power to compel a holder to present his warrant thereunder, or to bar him of relief if he failed to do so. *Held*, that it was within the province of the Legislature to repeal such act, and the repeal was effective with respect to warrants then outstanding, since it did not deprive a city of any vested right.

2. MUNICIPAL CORPORATIONS—POWER TO CALL IN WARRANTS FOR CANCELLATION—ARKANSAS STATUTE.

Act Ark. March 27, 1893 (Acts 1893, p. 169), which empowers cities to call in outstanding warrants by order for cancellation and reissue not oftener than once a year, and provides that, if any warrant is not presented pursuant to such an order, it shall be barred, is not retroactive, and does not apply to warrants issued before its passage. If otherwise construed, it is unconstitutional, as impairing the obligation of contracts.

3. SAME—CITY WARRANTS—AUTHORITY TO AFFIX SEAL.

Sand. & H. Dig. Ark. § 5273, which provides that "each city council shall cause to be provided for its clerk's office a seal * * * which seal shall be affixed to all transcripts, orders or certificates which it may be necessary or proper to authenticate under the provisions of this act or of any by-law or ordinance of the city," does not authorize the affixing of the clerk's seal to city warrants, nor does any other provision of Act March 9, 1875 (Acts 1874–75, p. 27), of which said section was a part; and, in the absence of a by-law or ordinance providing therefor, such affixing of the seal is unauthorized, and adds nothing to the dignity or effect of the instrument.

4. SAME—LIMITATION—ARKANSAS STATUTE.

Under the law of Arkansas, the five-years statute of limitations covering unsealed instruments applies to actions on city warrants which are unsealed, or to which a seal has been affixed without authority of law; and, such warrants being payable on demand, the statute begins to run from the time of their delivery.

At Law.

W. M. Cravens, for plaintiff.
C. D. James, for defendant.

ROGERS, District Judge. Plaintiff's action is based on certain warrants, commonly called "city scrip," of the city of Eureka Springs, Ark., all issued prior to the 27th of March, 1903. The city defends on two grounds: (1) The statute of limitations of five years; (2) that on the 3d of November, 1893, by its council, it made an order calling in for cancellation and classification under the act of March 27, 1893 (Laws 1893, p. 169), all the warrants of said city, and fixed a day on which said warrants should be filed—at 12 o'clock m. of March 15, 1894; that said order was published in accordance with the statute, and plaintiff failed to present his warrants as required by the order; and that therefore they are barred by the statute. These defenses will be considered in their inverse order.

As to the second defense, when these warrants sued on were issued there was in force in this state a statute authorizing the calling in of city warrants for canceling and reissuing the same. Laws 1874–75, p. 189. See, also, Watkins v. Eureka Springs, 49 Ark. 132, 4 S. W. 384, where the act is set out at length, and in which case sections 2 and 4 of the act are held unconstitutional, and leaving the whole act, as stated in that opinion, "of little practical utility." It, however, left enough of the act in force to authorize the calling in of warrants for cancellation and reissuing, but left the city no power to bar the holder if he failed to present them as required by the order of the court. This whole act, however, had been repealed by the act of March 27, 1903 (Acts 1893, p. 169), under which last act all the proceedings were had which are now pleaded to bar the warrants in suit. It may be conceded that so much of the act of February 27, 1875, as was valid, applied to all warrants issued while it was still in force; but, this being so, still there was no power left in the city to bar them if they were not presented, and no obligation imposed on the holder to present them. The legal status of the warrants was therefore the same as if the act of February 27, 1875, had never had any existence. And why should not this be so? The act of February 27, 1875, vested no right in the plaintiff. It imposed no obligation on him. It gave the city the right by order to call in warrants, but gave it no power to enforce the order. Watkins v. Eureka Springs, supra. The only right the city had was to make the order calling in the warrants, and, if any one presented the warrants, to examine, and reject the spurious and reissue the genuine. If no one presented warrants, no bar attached, and the city could do nothing. Is there any reason why the Legislature, who conferred these powers on the city, might not take them away? They related solely to the remedy the city had for getting rid of the spurious warrants and ascertaining the amount outstanding and this remedy it could not enforce. The city by the repeal of the act was not left without remedy in such cases. It could refuse to pay spurious warrants, and, if sued on them, defend on the ground they were spurious. All the right it lost by the repeal of the act was to cancel fraudulent warrants if any one saw fit to present them under the order calling them in for canceling and reissuance; and such an order could be made by the proper authorities and without a

statute, and, if any one presented the warrants, the same action might be had as under the act; but, in either event, obedience to such an order could not be enforced. Nobody has a vested right in a remedy. All remedies cannot be withdrawn as to past contracts, for that would infringe upon the obligations of such contracts. But as long as remedies are left in force, what the remedy shall be is within the discretion of the lawmaking power. In Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, the court held:

"The repeal of a statute of limitations of actions on personal debt does not, as applied to a debtor, the right of action against whom is already barred, deprive him of his property in violation of the fourteenth amendment to the Constitution of the United States."

In that case the whole question of vested rights in remedies is ably discussed upon authority. In Percy v. Cockrill et al., 53 Fed. 872, 4 C. C. A. 73, the United States Circuit Court of Appeals for the Eighth Circuit held:

"By the common law of Arkansas and of most other states, a husband has no vested interest in his wife's choses in action which he has taken no steps to reduce to his possession; and the married woman's act of 1873 (Mansf. Dig. § 4624), making such rights the sole property of the wife, and taking away all the husband's interest therein, violates no constitutional right of the husband, although the marriage took place before the passage of the act. Criscoe v. Hambrick (Ark.) 1 S. W. 150, and Shryock v. Cannon, 39 Ark. 435, distinguished."

The same court held in Richards v. Bellingham Bay Land Co., 54 Fed. 209, 4 C. C. A. 290, that "an inchoate right of dower is not such a vested interest as cannot be taken away by legislative action."

These are cases between real or artificial persons, and they are stronger than the case at bar. Surely the state may exercise as much power over its municipal corporations as it may over individuals. May it not by statute waive or withdraw the right altogether for the city to call in its warrants and cancel or reissue them? To do so in no wise infringes on any right of plaintiff. The repeal of the act left him his right to have his warrants paid, and, if not, to sue and enforce them by law. Nor can it, in view of the cases cited, be fairly said that any vested right of the city was infringed by the repeal. It is only "where a law is, in its nature, a contract, and where absolute rights have been vested under that contract, a repeal of that law cannot divest those rights." Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162. What "absolute right," not purely remedial, became vested in the city under the act of February 27, 1875? I think there was none. I conclude, therefore, that the legal status of the warrants after the repeal of the act of February 27, 1875, was exactly the same as if that act had never had any existence. That act, therefore, which was in force when the warrants were issued, can have no bearing or effect so far as the questions involved in this case are concerned. Its repeal clearly eliminated it from all consideration. But as stated, the proceedings had, to bar the warrants in controversy, were not had under that act. They were all had under the act of March 27, 1893 (Laws 1893, p. 169). That

act was enacted long after the warrants sued on were issued. Was it intended to operate retroactively? If so construed, would it be violative of article 1, § 10, of the federal Constitution, which prohibits all the states from passing any law impairing the obligations of contracts? The first question must be answered in the negative. In the first place, this statute is not a mere statute of limitation, nor is it analogous to it. Statutes of limitation relate to the remedy, and, as stated before, nobody can have a vested right in a remedy. ' They do not enter into and become part of the contracts made while they are in force. They may be changed by the Legislature at any time, subject to limitation that they will not be upheld as to contracts in force when they are enacted unless a reasonable time is given in which to institute suits before such contracts are barred. I need not cite authorities on this point, or stop to state the principle with more accuracy. But the statute under consideration does enter into and become a part of all warrants issued while it is in force. Allen v. Bankston, Collector, 33 Ark. 740; Desha County v. Newman, 33 Ark. 793. It says, in substance, to every holder of such warrant, when he takes it, "Bear in mind, the city reserves the right to call this warrant in at any time, not oftener than once a year, for the purpose of canceling and reissuing it, and if, when it is called in, you fail to present it, it will be barred;" and the holder assents to that agreement, which, in legal effect, becomes part of the warrant. But can such agreement as that be imported into a warrant in the absence of a statute authorizing it? It seems to me the question answers itself. It is a reductio ad absurdum to say that a statute which had no existence at the time a warrant was issued at that very time became a part of the warrant. But the Supreme Court of this state, in considering an exactly similar statute as relates to counties, intimated that the statute is not retroactive. Parsel v. Barnes & Bro., 25 Ark. 261; Allen v. Bankston, 33 Ark. 740; Cope v. Collins, 37 Ark. 649; Desha County v. Newman, 33 Ark. 792. It is the duty of this court to adopt that construction, even if his own conclusion did not agree with it. The act of March 27, 1893, was not intended to apply to warrants issued before its passage. If it was so intended, it was unconstitutional, in so far as warrants issued anterior to its enactment are concerned, because it imports into such warrants a condition and an obligation not originally contained in them, viz., the obligation to present the warrants when called in under an order of the city authorities, upon penalty of their being forever barred. No such obligation or penalty rested on the holder when the warrants sued on were drawn, and the Legislature possessed no power to import it into the warrants. The act is therefore unconstitutional as applied to warrants drawn before its enactment. This conclusion obviates the necessity of determining whether the city of Eureka Springs followed strictly the statute of March 27, 1893, in the proceedings under which it sought to bar these warrants. But see Goldman v. Conway County (C. C.) 10 Fed. 888, and Newton v. Askew, 53 Ark. 476, 14 S. W. 670.

As to the five-year statute of limitations, the question presented is far more difficult, and has had the very careful, patient, and thor-

ough investigation of the court. No decision, state or federal, has been found decisive of it. The question turns on the construction of the statutes of the state. It has been settled in this state that the statute of limitation runs against cities and towns, as regards real estate. Ft. Smith v. McKibbin, 41 Ark. 45, 48 Am. Rep. 19; Helena v. Horner, 58 Ark. 151, 23 S. W. 966. It has also been held that the statute of five years applies to county warrants, although they bear upon them the seal of the clerk of the county. In Crudup v. Ramsay, 54 Ark. 168, 15 S. W. 458, Mr. Justice Hemingway said:

"That the statute of limitation runs in favor of counties, against their ordinary indebtedness, is the rule in this state. Gaines v. Hot Springs Co., 39 Ark. 262; Desha Co. v. Jones, 51 Ark. 524, 11 S. W. 875. That it runs against county warrants follows, unless there is something in the law authorizing their issuance that takes them out of its operation. The law provides that whenever an allowance is made by the county court, and an order therefor entered upon the records, the clerk shall, when requested by the person in whose favor the allowance is made, issue a warrant for the amount of the allowance (Gantt's Dig. § 605; Mansf. Dig. § 1415), and that warrants shall be signed by the clerk and numbered progressively throughout the year (Id. § 606). It further provides that all warrants shall be paid out of any money in the treasury not otherwise appropriated, or out of the particular fund expressed therein, and shall be received, irrespective of their number and date, in payment of all taxes and debts accruing to the county (Id. § 610; Mansf. Dig. § 1420). Under this provision this court held that it was the duty of the sheriff and of the treasurer to receive warrants offered in payment of taxes or dues to the county, without regard to the time that had elapsed since their issuance. Daniel v. Askew, 36 Ark. 487; Whitthorne v. Jett, 39 Ark. 139; Howell v. Hogins, 37 Ark. 110. The decision in those cases was placed upon the language of the act, to wit, that 'such warrants, irrespective of their number and date, should be received in payment of taxes and dues to the county.' And in the case of Daniel v. Askew it was remarked by the court that the law provided two modes for the payment of warrants —the first, out of any money in the treasury not otherwise appropriated; and the second, in payment of taxes and dues to the county. It will be observed that the provision that they shall be received irrespective of date and number applies to the latter mode only, and does not by its terms extend to the mode provided by payment of money out of the treasury. This case is therefore not within the reason that controlled in the cases cited, and, if the statute of limitations does not apply, a reason for the exception must be found elsewhere. There is nothing in the act that suggests to us a reason for such exception. None has been pointed out by counsel, and we think that none exists."

Later on in the same case he says:

"The five-years statute applies in this case. The law does not require or authorize the issuance of warrants under seal, and the clerk could not, after drawing them as the law directs, add to their dignity or effect by the unauthorized affixing of the seal. As warrants are payable on demand, the statute begins to run from the date of their delivery. Our views are sustained by the rule of the Circuit Court of the United States of this district, as announced by Judge Caldwell, upon a consideration of all the authorities, in a very clear and satisfactory opinion. Goldman v. Conway Co. (C. C.) 10 Fed. 888."

This case was followed by the Circuit Court of Appeals for the Eighth Circuit in Thompson v. Searcy County, 12 U. S. App. 618, 57 Fed. 1030, 6 C. C. A. 674.

On the other hand, it was conceded in argument the courts hold that, where the statute requires the clerk of the county to attach his seal

to warrants, they become writings obligatory or specialties, and a different statute of limitation applies. Heffleman v. Pennington County (S. D.) 52 N. W. 851. It therefore follows that the question as to what statute of limitation applies to a county depends upon whether the warrant bears a seal or not, or whether, if it bears a seal, there was any authority of law for the seal being affixed to the warrants. It is settled in this state that there was no such authority; that an unauthorized affixing of the seal to a warrant in no wise effects any change in its character or adds to its dignity. In that event it would be treated as an unsealed contract. Crudup v. Ramsey, 54 Ark. 171, 15 S. W. 458; Thompson v. Searcy County, 12 U. S. App. 618, 57 Fed. 1030, 6 C. C. A. 674. I cannot imagine any reason why the general rule as to counties should not with equal propriety apply to cities and towns. If there be a difference, it must arise upon a difference in the statutes. The warrants in this case all bear the seal of the city clerk. The question therefore arises, where is the authority of law for affixing the seal on these warrants? The contention of the defendant is that there is no authority to be found in the statute directing the seal to be placed on city warrants, and it has shown by competent evidence that there never was any ordinance of the city of Eureka Springs directing it to be done, but that it has been the custom to do so ever since it became a city of the first class. The contention of the plaintiff is that it is authorized by section 5273 of Sandel & Hill's Digest of the Laws of Arkansas, corresponding to section 61 of the act of March 9, 1875 (Acts 1874–75, p. 27), which is the original general incorporation law of the state. That section is as follows:

"Sec. 61. Each city council shall cause to be provided for its clerk's office a seal, in the center of which shall be the name of the city, and around the margin the words 'City Clerk,' which seal shall be affixed to all transcripts, orders or certificates which it may be necessary or proper to authenticate under the provisions of this act, or of any by-law or ordinance of the city. For all attested certificates and transcripts, other than those ordered by the council, the same fees shall be paid as are allowed county clerks for similar services."

Now, mark the language of that section—"transcripts, orders or certificates which it may be necessary or proper to authenticate under the provisions of this act, or of any by-law or ordinance of the city." It is perfectly clear that by the very terms of this act the seal of the clerk is to be affixed only to such transcripts, orders, or certificates, as it may be necessary or proper to authenticate under the provisions of this act. The act therefore must be looked to, to ascertain what is necessary or proper to authenticate under its provisions. But before we look to the act, let us examine this language a little farther. A warrant is not "a by-law," nor is it an "ordinance," nor is a warrant a "transcript." Plaintiff does not contend otherwise, but he does contend that a warrant is an order or a certificate. Let us examine this contention. What is a warrant? In Crudup v. Ramsey, 54 Ark. 169, 15 S. W. 458, the court said:

"The law provides that whenever an allowance is made by the county court, and an order therefor entered upon the records, the clerk shall, when requested by the person in whose favor the allowance is made, issue a warrant for the amount of the allowance."

It is clear, therefore, that as to counties a warrant is not an order. The warrant is issued upon the order, and entered of record, and without the order the warrant is void. Parsel v. Barnes, 25 Ark. 261. Why does not the same rule apply to cities? Much less is a warrant a certificate (and yet sometimes in the statutes they are found to be used as synonyms), for certificates may or may not be issued on orders of the county. As to cities, I have been unable to find, after the most careful research, any express authority, or authority in terms, for issuing any warrants at all. We know it is done, and they are made receivable for city taxes. Sand. & H. Dig. § 6576. But this section is no part of the act of March 9, 1875. It was enacted July 23, 1868. The power to issue warrants is apparently traceable to sections 5130 and 5131 of Sandel & Hill's Digest. These sections correspond to sections 10 and 11 of the act of March 9, 1875. That act, as stated, is the original general incorporation act for the organization of cities and towns; and the power is conferred by these sections on cities to sue and be sued; to contract and be contracted with; to acquire, hold, and possess property; real and personal; and to exercise such other powers and to have such other privileges as an incident to other corporations of like character and degree, not inconsistent with the act or the general statutes of the states; and corporations organized under the act are made subject to the restrictions of the act itself. The most careful research fails to disclose in the act any reference to city warrants, except in section 89 (Acts 1874–75, p. 37), which reads as follows:

"Sec. 89. That any person owning property and having taxes to pay in any city or town, may, upon application to any judge or court, having authority to grant injunctions, enjoin the collection of any tax levied in such city or town, without authority of law, and may also enjoin the issue or the payment by such city or town of any warrants, certificates or other form or evidence of indebtedness against such city or town, issued or contracted without authority of law."

It will be noted that in this section the terms "warrants" and "certificates" are not used as being the same, but the word "certificates" is coupled with the words "other forms or evidences of indebtedness." Whatever significance that may have, there is no authority found there for attaching the clerk's seal to warrants or anything else. It will be borne in mind that the language of section 61, which we are considering, is, "which seal shall be affixed to all transcripts, orders or certificates which it may be necessary or proper to authenticate under the provisions of this act, or of any by-law or ordinance of the city. For all attested certificates and transcripts, other than those ordered by the council, the same fees shall be paid as are allowed to county clerks for similar fees." It will be noted that in the last paragraph the word "warrants" is omitted. It embraces only transcripts and certificates. It is to be inferred from this that the city clerk was not entitled, to say the least of it, to a fee for affixing the seal to city warrants. Otherwise the word "warrants" would have been retained in that paragraph. Moreover the act requires the seal to be attached to all "transcripts, orders or certificates which it may be necessary or proper to authenticate under this act." It therefore appears that for all certificates and transcripts ordered by the council the clerk gets no fees. He only gets

fees for attested certificates and transcripts necessary or proper to authenticate under the provisions of the act, and not those ordered by the council. We are, therefore, as stated, confined to the act itself, not the general laws of the state, to find what transcripts, orders, or certificates it is necessary or proper for the seal to be attached. An examination of the act of March 9, 1875, will disclose various certificates which the clerk must issue, such as the rate of taxation to be certified by him to the county clerk; the delinquent tax list (section 64); the delinquent tax assessed against property for opening streets (section 70); the certificate of by-laws, ordinances, or any act or proceeding of any municipal corporation recorded in any book or entered on any minutes or journal kept by the corporation to be used in evidence (section 27). The act also defines the duty of the city clerk (section 51), but nothing is said of either warrants or seals in that section. The act is barren of any provision from which any inference, however remote, can be fairly drawn that seals are to be attached to warrants. On the other hand, the act specifies to what papers seals shall be attached. The maxim, "Expressio unius est exclusio alterius," seems to apply. It is clear, I think, that no provision is to be found in the act of March 9, 1875, by which it is made necessary or proper to authenticate city warrants by the clerk's seal. Nor is there any authority for authenticating certificates of any kind by attaching the clerk's seal, except such as the act provides for; and if the act, in section 89, should be construed as using the word "warrant" as a synonym for "certificate," or other form or evidence of indebtedness, still no provision is found in the act authorizing the clerk's seal to be affixed to either of them. The act is definite and specific as to what the seal of the clerk shall be affixed, and nothing can be added to it by the court or by construction when it is clear in its terms. The warrants sued on must be treated as unsealed instruments. In that event the five-year statute of limitation applies. It may be added that, in the opinion of the court, neither the Constitution of 1868, nor that of 1874, has any application to these warrants. The statute of limitation for unsealed instruments has been five years ever since 1844 (Sand. & H. Dig. § 4827), and remains unaffected by any of the state Constitutions.

Judgment for the defendant under the five-year statute of limitation.