McLEAN v. VALLEY COUNTY, NEB.

(Circuit Court, D. Nebraska. May 7, 1896.)

1. JURISDICTION OF FEDERAL COURTS—ASSIGNED COUNTY BONDS.
    County bonds and coupons, being made by a corporation, come within the exception to the general rule that an assignee cannot sue on a chose in action in the federal courts unless the citizenship of the original owner was such as would have enabled him to maintain the suit.

2. COUNTY BONDS—INNOCENT PURCHASERS.
    A purchaser of county bonds has a right to rely on the canvass and return made by the official canvassers, which show that the proposition to issue the bonds was carried by more than the requisite two-thirds of the votes cast on the question.

3. SAME—LIMIT OF INDEBTEDNESS—INNOCENT PURCHASERS.
    A purchaser of county bonds, in determining whether the aggregate issue exceeds the statutory limit of 10 per cent. of the assessed value of the county property, has a right to rely on the amount of the assessment, as finally established by the board of equalization, and certified by the county clerk to the auditor of state, without going to the books of the several precinct assessors.

4. SAME—FUNDING BONDS—NEBRASKA STATUTES.
    Under the acts of Nebraska of 1877 and 1879, prior to the amendment of 1883, the county of Valley had authority to issue bonds to the full limit of 10 per cent. of the assessed valuation of the county for the purpose of funding unpaid warrants and indebtedness, although there were still outstanding improvement bonds sufficient to make the total amount of bonds in excess of 10 per cent.

This was an action at law by Hector McLean against the county of Valley, Neb., to recover on certain county funding bonds and coupons issued January 6, 1886. The case was tried to the court, a jury being waived.

From the evidence submitted, I find the facts in this case to be as follows:

(1) I find that the plaintiff herein, Hector McLean, is now, and was when this suit was begun, a citizen of the state of New York; that the defendant, the county of Valley, was, when this suit was commenced, and is now, a county corporate of the state of Nebraska, created under the laws of the state of Nebraska, and that the amount involved in this controversy exceeds the sum of $2,000, exclusive of interest or costs.

(2) I find that Valley county was duly organized in accordance with and under the provisions of the constitution and statutes of the state of Nebraska, such organization being completed in the year 1873; the affairs of the county being managed and controlled by a board of commissioners.

(3) I find that a legal meeting of the board of commissioners of said county of Valley was held on the 7th day of October, 1879, and at such meeting the following resolution was adopted and spread upon the records of the board: "Resolved, that the following proposition be, and the same is hereby, submitted to the qualified electors of said Valley county: 'Shall said Valley county issue its coupon bond in denominations of not less than fifty nor more than one thousand dollars to the amount of thirty-two thousand dollars ($32,000), to pay the outstanding and unpaid warrants and indebtedness of said county, in the following order: First, the general fund; second, the special bridge fund; and, third, the land road fund. Said bonds to be dated January 1, 1880, and payable at the office of the county treasurer of said county, and to run twenty years with interest at the rate of seven per cent. per annum, payable annually: provided, that such bonds shall be redeemable at any time after ten years, upon giving at least thirty days' notice of such time of payment in a paper published in said county, and after the completion of said publication said bonds shall cease to draw interest. The above provisions shall be inserted in said bonds. The said bonds shall not be sold for less than ninety per cent. of their par value. There shall be

levied and collected a tax, annually, as provided by law, for the payment of the interest on said bonds as it becomes due: provided, that an additional amount shall be levied and collected sufficient to pay the principal of such bonds at maturity: and provided, that not more than twenty per cent. of the principal of said bonds shall be levied and collected in any one year: and provided, always, that in no event shall bonds be issued to a greater amount than ten per cent. of the assessed valuation of said county. Interest shall be paid on said bonds only from and after the date of sale or exchange of said bonds. The form in which the above proposition shall be submitted shall be by ballot, upon which ballot shall be printed or written or partly printed and partly written, the words, "For Funding Bonds," or "Against Funding Bonds," and all ballots cast having thereon the words "For Funding Bonds" shall be deemed and taken to be in favor of the above proposition, and all ballots cast having thereon the words "Against Funding Bonds" shall be deemed and taken to be against the above proposition. The question of the adoption of the above proposition is hereby submitted to the qualified electors of Valley county, state of Nebraska, at the general election to be held November 4, 1879, at the following mentioned places in Valley county, Nebraska: At the schoolhouse in North Loup, in North Loup precinct, at the courthouse in Ord precinct, at the schoolhouse in school district No. 6 in Springdale precinct, at the house of Boone M. Hawthorn in Arcadia precinct, at the schoolhouse in Calamus precinct, at the schoolhouse in school district No. 9 in Myra Creek precinct, and at the house of Lars Nelson in Liberty precinct; and which election will be open at 8 o'clock in the morning and will continue open until six o'clock in the afternoon of the same day.'"

(4) I find that in accordance with the terms of said resolution the question of issuing bonds and levying a tax was submitted to the voters of Valley county at an election duly held on the 4th day of November, 1879, which was a general election at which state and county officers were voted for, the highest number of votes cast at such election being ——; that the ballots used to vote upon the matter of issuing bonds had thereon the words "For Funding Bonds" or "Against Funding Bonds," and no other words applicable to the question of issuing bonds and levying a tax for the payment thereof; that at such election duly held at the several voting precincts within said Valley county there were cast upon the question of issuing bonds 236 ballots in all, of which 227 had thereon the words "For Funding Bonds" and 9 had thereon the words "Against Funding Bonds"; that the votes thus cast were duly canvassed by the proper canvassing board, and the proper abstract showing the result of the election and vote were returned to the board of commissioners of Valley county, and were made part of the public records of the county.

(5) I find that on the 24th of November, 1879, a legal meeting of the board of commissioners of Valley county was held, at which the following resolutions were adopted and spread upon the records of the board: "Whereas, the board of county commissioners of Valley county, Neb., did on the 7th day of October, 1879, submit to the people of said county the question of raising $32,000.00 in bonds of said Valley county for the purpose of funding the outstanding and unpaid warrants and indebtedness of said county; and whereas, the official abstract of votes cast at the general election held in the said county of Valley and state of Nebraska on the 4th day of November, A. D. 1879, regarding said proposition, was laid before the board at a regularly called meeting thereof, held this 24th day of November, A. D. 1879, said abstract showing that two hundred and twenty-seven (227) votes were cast in favor of said proposition and that nine (9) votes were cast against said proposition, and it appearing that more than two-thirds of the votes cast were in favor of said proposition: Now, therefore, be it resolved, that the proposition for issuing $32,000 in bonds of said county for the purposes above stated be, and the same is hereby, adopted. Resolved, that we issue coupon bonds in denominations of not less than $50.00 or more than $100.00 not exceeding $32,000 to pay the outstanding and unpaid warrants and indebtedness of said county, said bonds to be issued and sold in accordance with the proposition submitted to the legal electors of said county at the general election held on the 4th day of November, 1879, and now of record on page 157 of Commissioner's Record. Be it further resolved, that Peter Mortensen be, and he is hereby, authorized to negotiate and sell the above-mentioned

bonds upon such terms as shall seem best, but for a sum not less than 90 cents on the dollar, and any and all such sales of bonds to be subject to the approval of the county commissioners. And the said Peter Mortensen shall enter into bonds to render a just and true account of all sales made under this resolution, and to receive ½ of one per cent. on the sales made as compensation for such sales."

(6) I find that bonds in due form and to the aggregate amount of $32,000, with interest coupons attached, were issued in the name and under the seal of Valley county under date of January 6, 1880, and placed in the hands of Peter Mortensen for sale on behalf of the county, and were by him sold to J. G. Taylor, a citizen of the state of Nebraska, residing in Omaha, for the price of 92 cents on the dollar of the full value of the said bonds, and the proceeds were paid into the treasury of Valley county, and that within two years from the date of the bonds the same were resold by said Taylor to the present holders for the sum of 97 cents on the dollar of the face value of said bonds, and that said purchaser had no actual notice of any facts affecting the validity of said bonds, except such as the law would impart to them from the records of the county and the statutes of the state; that at the date of the bringing of this action and at the present time the plaintiff, Hector Mc-Lean, owned 20 of said bonds of the denomination of $500 each, and numbered from 22 to 41, both inclusive, and also owned the several coupons belonging to said bonds numbered 13, 14, and 15, and representing the interest coming due on the 1st days of January in the years 1893, 1894, and 1895, upon said bonds above named; there being 60 coupons in all, each for the sum of $35, and amounting in the aggregate to the sum of $2,100, exclusive of interest; the said coupons being now fully due and wholly unpaid.

(7) I find that coupons numbered 14 and 15 belonging to bonds numbered from 1 to 5, inclusive, and for $100 each, and coupons numbered 14 and 15 belonging to bonds 1, 2, and 3 and bonds 52 to 60, inclusive, for $500 each, were, when this suit was brought, and are now, the property of William G. Ball, who was, when this suit was brought, and is now, a citizen of the state of New York; that the coupons numbered 13, 14, and 15 belonging to bonds 5 to 21, both inclusive, and for the sum of $500 each, and coupons numbered 13, 14, and 15 belonging to bonds numbered 42 and 51, and for $500 each, were, when this suit was brought, and are now, the property of Darling Bros., who were, when this suit was begun, and are now, citizens of the state of New York; that the coupons numbered 13, 14, and 15 belonging to bonds numbered 6 to 20, both inclusive, and each for the sum of $100, were, when this suit was brought, and are now, the property of the Bradford Savings Bank, a corporation created under the laws of the state of Vermont; that coupons numbered 13, 14, and 15 belonging to bond numbered 4, for the sum of $500, was, when this suit was begun, and is now, the property of the Manufacturers' National Bank, a corporation created under the laws of the United States, located and doing business in the state of New York.

(8) I find that for the years of 1881 to 1892, both inclusive, the amount necessary to pay the interest accruing annually upon the $32,000 worth of bonds issued as aforesaid was returned by the commissioners of Valley county in the estimates furnished for the amounts to be raised by taxation each year; that a tax therefor was ordered, levied, and collected, and the interest coupons for the twelve years named were duly paid by the treasurer of the county, and the paid coupons were canceled, and were in each year allowed to the treasurer in settlement of his accounts by the proper auditing authority on behalf of the county.

(9) I find that in the years 1893, 1894, and 1895 the county of Valley refused to pay the coupons coming due upon said bonds for those years, and the same are now wholly unpaid.

(10) I find that the coupons for the years 1893, 1894, and 1895, owned by William G. Ball, Darling Bros., Bradford Savings Bank, and the Manufacturers' National Bank, were transferred by delivery by the owners thereof to Hector McLean, the plaintiff herein, for the purposes of collection.

(11) I find that in the years 1879 and 1880 there was attached to Valley county, for judicial election and revenue purposes, under the provisions of the act of the legislature of Nebraska dated February 4, 1875, certain unorganized territory, sometimes designated as Precincts 6 and 7 and sometimes

as Willow Springs and Forks precincts; that these precincts do not now form part of Valley county; that at the election held November 4, 1879, when the proposition to issue bonds was submitted to the electors of Valley county, the same was not submitted to the voters living in said attached precincts, to wit, Nos. 6 and 7; that in said precincts numbered 6 and 7 there was cast for the state officials voted for at that election 11 votes in all; that these votes were not considered or canvassed in connection with the proposition to issue bonds submitted as hereinbefore stated.

(12) I find that the assessment rolls or books made by the several precinct assessors of Valley county, including precincts 6 and 7, came before the county board of equalization in due season, and action thereon was had by said board, and, after being corrected and equalized, the county clerk of Valley county in due form made out an abstract of assessment, intended to show the aggregate assessment of said county; and certified the same to the auditor of the state of Nebraska, the said abstract and certificate being in the following form:

"Abstract of Assessment in Valley County, Nebraska, for the Year One Thousand Eight Hundred and Seventy-Nine.

|  | Number | Value. | Average Value. |
|---|---|---|---|
| Whole Number of Acres, & Value of land listed in the County.......... ......................... | 154980 | $257,565 | 1 66 |
| Total valuation of Town Lots........................ | 672 | 3,405 | 5 06 |
| Amt. of money used in Merchandizing.............. |  | 4,157 |  |
| Amt. of money invested in Manufactories, including Buildings, Machinery & Materials..... .......... |  | 585 |  |
| Number & Value of Horses...................... | 681 | 19,338 | 28 40 |
| Number & Value of Mules and Asses.............. | 688 | 2,503 | 36 80 |
| Number & Value of Neat Cattle ................... | 1909 | 20,568 | 10 77 |
| Number & Value of Sheep...................... .... | 54 | 52 | 96 |
| Number & Value of Swine...................... | 522 | 509 | 97 |
| Number & Value, Carriages, wagons & Vehicles of every description..... ......................... | 320 | 4,529 | 14 15 |
| Amt. of moneys, whether in possession or on deposit, & including Bank Bills, Money, or Labor due from solvent debtors on contract or in judgt. & whether within this State or not... ...................... |  | 1,562 |  |
| Amt. of mortgages, public stocks, loans & other securities and accounts bearing interest........... |  | 2,222 |  |
| Amt. stocks or shares in any Bank or Company incorporated by this state or any other state or Territory & situated in or transacting business in this state, Household furniture not exempt, and including Gold & Silver plate, Musical Instruments, Watches & Jewelry................................ |  | 2,959 |  |
| Amt. Private Libraries for their value over hundred dol. All other personal property not enumerated & not exempt by law.............................. |  | 6,814 |  |
| Number of Polls............................. |  |  |  |
| Number of Dogs............................. |  |  |  |
| Amount of Railroad Property................. .. ... |  |  |  |
| Total valuation of Property in County....... |  | $326,768 |  |

"To F. W. Liedke, Auditor of Nebraska: I hereby certify that the above is a correct abstract of the assessment rolls, made and filed in my. office by W. H. Rood, S. A. Stacy, J. F. Chubbuck, A. Fradenburgh, J. L. Coon, C. H. Lawrence, James Barr, and A. Ward, precinct assessors for Valley county, state of Nebraska.

"Witness my official signature, and the seal of said county, this second day of May, A. D. 1879.

{ County Seal. }
{ Nebraska, Valley }
{ County. }

"H. A. Babcock,
"Clerk of Valley County,
"Nebraska."

(12½) I find that in the years 1879 and 1880 there were no railroads or railroad property in Valley county, hence no addition to the assessment as above certified was made by the state board, and the taxes, state and county, assessed and levied for the year 1879 were so assessed and levied for that county upon the basis of the above abstract, showing $326,768 to be total valuation in the county.

(13) I find that the books used by the district or precinct assessors of Valley county for the year 1879, leaving out those containing the assessments for precincts 6 and 7, which embraced the unorganized territory attached to Valley county, show that the total assessment for Valley county proper, as equalized by the county board for the year 1879, was the sum of $279,349; that is to say, that the footings now found recorded in said several books, if added together, will make said sum of $279,349.

(14) I find that there are errors in some of the figures in said assessors' books, which, if now corrected, would reduce the total aggregate of the assessed values shown upon said books, to a sum somewhat less than that of $279,349.

(15) I find that at the time the proposition to issue bonds to the amount of $32,000 was submitted to the voters of Valley county at the election held in November, 1879, and in January, 1880, when the bonds were in fact issued and sold, there were outstanding and unpaid bonds issued by the said county of Valley to the aggregate amount of $6,000, the same having been issued as bridge bonds, and for works of internal improvements; and that said bonds have, since January, 1880, been put into judgment against said county of Valley.

(16) I find that all of the warrants and indebtedness for the funding of which the $32,000 of bonds were voted and issued accrued and came into existence against Valley county after the 1st day of November, 1875.

(17) I find that the bonds issued under date of January 6, 1880, by the defendant county were each of the form and contained the recitals set forth in the copies thereof attached to the petition in this case filed.

(18) I find that none of these bonds were ever registered with or by the auditor of the state of Nebraska; that after the sale thereof, a portion thereof, amounting to about $10,000, were offered for registration, but the state auditor refused to register the same.

C. C. Flansburg, H. H. Babcock, and Babcock & Babcock, for plaintiff.

C. H. Munn, Burr & Burr, Clements Bros., and Coffin & Stone, for defendant.

SHIRAS, District Judge (after stating the facts). On behalf of the defendant, exception is taken to the jurisdiction of the court on the ground that the plaintiff holds title to the coupons sued on and the bonds to which they belong by transfer from the original purchaser, J. G. Taylor, who, being a citizen of the state of Nebraska, could not maintain an action thereon in that court. As the bonds and coupons are made by a corporation, they come within the exception to the usual rule that an assignee or transferer of a promissory note or other chose in action cannot maintain an action in the federal court unless the court would have jurisdiction in case the suit was in the name of the original owner of the chose in action. As it appears from the evidence that the plaintiff is the owner in his own right of coupons amounting to $2,100 of those sued on, it follows that the court has jurisdiction of the case. On behalf of the defendant it is sought to show that the canvass of the vote upon the question of the issuance of the bonds was incorrect, but I hold that the purchaser of the bonds had the right to rely upon the canvass and return made by the official canvassers, which

showed that the proposition to issue bonds in the sum of $32,000 had been carried in the affirmative by far more than a two-thirds majority of the votes cast upon that question.

I also hold that the purchasers of the bonds, in determining or ascertaining whether the aggregate issue of bonds exceeded the statutory limit, were not required to go to the books of the several precinct assessors to determine from them the amount of the assessable property of the county, but such purchasers were justified in relying upon the amount of the assessment as finally established by the board of equalization, and certified by the county clerk to the auditor of the state, which showed the valuation of the county to be $326,768.

I also hold that in January, 1880, when the bonds in question were issued, the county had the power to issue funding bonds under the provisions of the acts of the legislature of 1877 and 1879 to an amount not exceeding 10 per cent. of the assessed valuation of the county, to pay the outstanding and unpaid warrants and indebtedness of the county, and that an issue of bonds for that purpose not exceeding 10 per cent. of the assessed valuation of the county would not be invalidated because the county had previously issued bonds in aid of works of internal improvement, thus making the total issue of bonds in excess of 10 per cent. of the assessed valuation of the county. Since the amendment of 1883 and the ruling thereon by the supreme court of Nebraska in State v. Babcock, 18 Neb. 141, 24 N. W. 556, rendered at the July term, 1885, the power of the county may have become limited to a total issue of bonds not exceeding 10 per cent. upon the assessed valuation; but in January, 1880, there had been no such ruling of the supreme court, and, so far as I am now advised, the supreme court of the state has never held that previous to the amendment of 1883 the power of the county to issue bonds had been exhausted when the total issue for all purposes reached 10 per cent. upon the assessment of the county. In January, 1880, therefore, there was no express statutory declaration that the power to issue bonds was limited to 10 per cent. upon the assessed valuation in the aggregate, and there was no decision to that effect by the supreme court. There was a statute which expressly authorized the issuance of bonds to fund the outstanding and unpaid warrants and indebtedness of the county, with a limitation that bonds should not be issued to an amount exceeding 10 per cent. upon the assessed valuation of the county. The county authorities construed this limitation to apply only to bonds issued under the provisions of the statute as it there existed; and under this construction they submitted to the electors of the county the question whether bonds to an amount substantially equal to 10 per cent. of the assessed valuation should be issued to fund the warrants and other indebtedness of the county, and the proposition was carried by a large majority of the votes cast. Under these circumstances, and in view of the fact that it is at least an open question whether the 10 per cent. limitation found in the acts of 1877 and 1879 should be held to apply to or include any bonds except those issued under

the provisions of those acts, this court is not justified in holding that the bonds issued in pursuance of the vote of the people of the county at the election of November, 1879, are void in the hands of innocent holders, by reason of a want of power to issue the same. I therefore hold that the plaintiff is entitled to judgment for the sum of $2,100, with legal interest thereon from the date of the maturity of the coupons owned by plaintiff up to date of entry of judgment.

I further hold that under the provisions of the statute of Nebraska actions must be brought in the name of the real party in interest, and therefore in this action plaintiff cannot recover upon the coupons belonging to William G. Ball, Darling Bros., the Bradford Savings Bank, and the Manufacturers' National Bank. The action upon the coupons owned by these parties must be dismissed, without prejudice.