LYON COUNTY, IOWA, v. KEENE FIVE-CENT SAV. BANK, OF KEENE, N. H., et al.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1900.)

No. 1,252.

1. JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE—BONDS PAYABLE TO BEARER.

Municipal bonds payable to "——— or order" are, in legal effect, payable to bearer, and a transferee who is a citizen of another state, and to whom they were transferred in the same condition by delivery, may maintain an action thereon in a federal court, whether the original holder could have done so or not.[1]

2. MUNICIPAL BONDS—VALIDITY—LIMIT OF INDEBTEDNESS.

Negotiable refunding bonds of a county issued under proper legislative enactments, which authorized their issuance in exchange for valid outstanding evidences of indebtedness, in the hands of purchasers for value, before maturity, will be presumed to have been so issued, and not to have increased the indebtedness of the county.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

For opinion below, see 90 Fed. 523.

E. C. Roach (E. Y. Greenleaf and Simon Fisher, on the brief), for plaintiff in error.

J. M. Parsons, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. These were two separate actions brought by the defendants in error, respectively, against the county of Lyon, in the state of Iowa, the plaintiff in error, upon refunding bonds issued by that county, and dated, respectively, June 1, 1880, September 6, 1881, June 13, 1882, September 1, 1884, and March 1, 1885. The two cases were consolidated, and tried together by the court without a jury, and the complaint here is that the special finding of facts, upon which the court below rendered judgments against the county, does not sustain those judgments, but entitles the plaintiff in error to judgments in its favor. Two grounds for this contention are urged upon our consideration.

1. Some of the bonds upon which the judgments were founded were issued by the county to citizens of Iowa, and were by them sold and delivered to citizens of other states, while they read in this way, "The county of Lyon, in the state of Iowa, for value received promises to pay ——— or order" the amount named in the bond; and it is said that the court below had no jurisdiction of the causes of action based upon these bonds, because the act of congress of August 13, 1888 (25 Stat. 434), reads:

"Nor shall any circuit or district court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note

---

[1] As to diverse citizenship as a ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249, and, supplementary thereto, note to Mason v. Dullagham, 27 C. C. A. 298.

or other chose in action in favor of any assignee, or of any subsequent holder, if such instrument be payable to bearer, and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

Under this act an action cannot be maintained in the circuit court upon an instrument made by a corporation which is not payable to bearer, unless such an action could have been maintained by the assignor of the plaintiff. But, if such an instrument is payable to the bearer, its holder may recover upon it in the federal court, whether his assignor could have done so or not. Newgass v. City of New Orleans (C. C.) 33 Fed. 196; Rollins v. Chaffee Co. (C. C.) 34 Fed. 91; Wilson v. Knox Co. (C. C.) 43 Fed. 481; Cloud v. City of Sumas (C. C.) 52 Fed. 177; Benjamin v. City of New Orleans (C. C.) 71 Fed. 758. The purpose of this provision of the act of congress unquestionably was to give better credit to negotiable instruments issued by corporations, which pass from hand to hand by mere delivery without formal assignments, by giving their holders the right to enforce them in the federal courts. The bonds in hand fall within the object and the legal intendment of the act. They were payable to "——— or order" when they were issued, and they remained in that condition until they had been bought by nonresidents of the state of Iowa. While they were in that condition the title to them passed from vendor to purchaser by mere delivery. Possession of them was evidence of title to them, and their form was an assurance to every holder that their maker intended to make them negotiable, to make them payable to the holder as bearer, and to authorize the holder to keep them payable to bearer, or to fill the blank with his own name, and make them payable to himself or order, as he chose. In other words, a bond or note of a corporation payable to "——— or order" is, in legal effect, payable to the holder or bearer. It has every attribute of that class of commercial paper which the bearer may enforce in the federal courts without proof that his assignor could have done so, and he may maintain an action upon it whether his assignor could have done so or not. White v. Railroad Co., 21 How. 575, 577, 16 L. Ed. 221, and cases there cited.

2. The second reason why it is claimed that these judgments are erroneous is that it is contended that these bonds created an indebtedness in excess of the limitation of 5 per centum of the value of the taxable property within the county prescribed by section 3, art. 11, of the constitution of Iowa. It is conceded that all the bonds involved in this action, except those dated on June 13, 1882, fell within the limitation prescribed by the constitution, unless the bonds to the amount of $100,000, familiarly known as the "Shade Bonds," constituted an indebtedness of the county. These Shade bonds were issued and sold, and their proceeds were used, according to the finding of the court below, to pay prior indebtedness of the county in the year 1879, when the debt of the county was more than $100,000, and the limit of its indebtedness was $45,756.66. They were issued under a single resolution, which authorized Shade to receive and sell them, and to apply the proceeds for

the county. They were not exchanged for prior bonds, but were sold, and the resolution authorizing them disclosed an amount in excess of the limitation, and we adhere to the conclusion which we reached in Lyon Co. v. Ashuelot Nat. Bank, 30 C. C. A. 582, 87 Fed. 137, that they did not create a debt of the county which it can use to defeat the valid indebtedness it subsequently incurred. Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360. When the Shade bonds are laid aside no question remains of the validity of any of the bonds in suit, except those dated on June 13, 1882. The amount of bonds dated on that day was $9,000. The indebtedness of the county at that time was $46,225. A question arose in the court below whether or not the exemptions from taxation allowed by sections 1271 and 1272 of McClain's Code of Iowa for planting and cultivating fruit trees and forest trees should be reckoned as a part of the taxable property of the county in determining the limit of its indebtedness, but it is unnecessary to consider that question in this court, in view of the findings of the trial court and the legal presumption of validity which accompanies the bonds. Conceding that these exemptions should not be regarded as a part of the taxable property of the county, the limit of its indebtedness was $48,912.95 on June 13, 1882.

These were refunding bonds, and the court has found that they were issued for the purpose of taking up outstanding floating warrants against the county, and that there were such warrants to the amount of $15,225 outstanding at the time these bonds were issued, and it has not found that any of these bonds were sold, or that they were issued in any other manner than by the legal method of the exchange of the bonds for the warrants, dollar for dollar, pointed out in Doon Tp. v. Cummins, 142 U. S. 366, 378, 12 Sup. Ct. 220, 35 L. Ed. 1044. The court below has found that these bonds are the negotiable refunding bonds of the county, signed by its officers, and issued under the authority of proper legislative enactments, and that they were purchased by the defendants in error for value before maturity. They were therefore presumptively valid. If they created a debt in excess of the constitutional limitation, that was an affirmative defense, and the burden was on the county to plead and prove it. It assumed the burden, but it failed to bear it. It pleaded this defense, but it failed to prove it. It only established that when these $9,000 of bonds were issued the limit of the county indebtedness was $48,912.95, and its actual indebtedness was $46,225. Obviously, if the county officers violated the constitution and issued and sold these bonds while the prior debt of $46,225 remained outstanding, they increased the debt above the limit. But there is no presumption that they violated the law, and no finding that they did so. There was a legal method—the method of exchange—by which they could have issued the bonds without increasing the debt a mill, and the legal presumption is that they pursued this method, and that the issue of these bonds neither created nor increased the debt of the county, but simply changed its form. City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C.

C. A. 38, 57 U. S. App. 593; E. H. Rollins & Sons v. Board of Com'rs of Gunnison Co., 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399; Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613, 40 L. Ed. 760; Chaffee Co. v. Potter, 142 U. S. 355, 363, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040. The judgment below is affirmed.