## SCOTT COUNTY, ARK., v. ADVANCE-RUMLEY THRESHER CO.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1923.)

No. 6182.

1. **Courts** ⬅312(3)—**Federal court has jurisdiction of suit by assignee of instrument payable to bearer and made by corporation.**

Under Judicial Code, § 24(1) (Comp. St. § 991), a federal court has jurisdiction of a suit by an assignee of an instrument payable to bearer, if made by a corporation, regardless of whether or not the assignor might have brought suit therein.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Courts ⬡⟹312(3)—County of Arkansas is "corporation," within Judicial Code, § 24(1).**

Act Ark. Feb. 27, 1879, repealing all prior laws making counties corporations and authorizing them to sue and be sued as such, cannot defeat the jurisdiction of a federal court in a suit by a citizen of another state to enforce an obligation contracted by a county under powers given it by statute, and if such obligation is evidenced by an instrument payable to bearer, such instrument is one "made by a corporation," within the purview of Judicial Code, § 24(1), being Comp. St. § 991.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

**3. Counties ⬡⟹167—Warrants are not "negotiable instruments."**

While county warrants, where payable to bearer, are transferable by delivery, and the holder may sue thereon in his own name, they are not "negotiable instruments," within the law merchant, and a transferee takes them subject to all defenses which might be made against them in the hands of the original payee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

**4. Counties ⬡⟹169—Reissued county warrants subject to same defenses as originals.**

Where county warrants are called in and new ones issued in their stead, the new warrants are subject to any defense applicable to the originals.

**5. Estoppel ⬡⟹62(3)—County receiving benefit of illegal contract held estopped to deny liability thereon.**

A county having statutory authority to make contracts for road purposes, but only when an appropriation was previously made for road work, which contracted for purchase of road machinery without first making an appropriation, and received and used the machinery for four years, cannot escape liability therefor on the plea that the contract was made without authority.

**6. Counties ⬡⟹124(2)—County may ratify unauthorized acts or contracts of officers or agents, which were within the scope of its powers.**

A county may ratify unauthorized acts and contracts of its agents or officers, which are within the scope of the corporate powers, but not otherwise.

**7. Estoppel ⬡⟹62(3)—Applies to counties with respect to contracts which they had power to make.**

When courts have refused to apply the doctrine of estoppel to counties or municipal corporations, it was where the corporation had no power under any circumstances to make the contracts or issue the bonds or warrants in suit.

**8. Municipal corporations ⬡⟹248(3)—Acceptance of benefit of an authorized contract, which was within its powers, presumed ratification.**

The principle that when a contract is made by an agent of a private corporation in its behalf and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract, applies as to municipal or quasi municipal corporations, though the ratification may require somewhat different proof.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by the Advance-Rumley Thresher Company, assignee of the Joe Lyons Machinery Company, against Scott County, Ark. Judgment for plaintiff, and defendant brings error. Affirmed.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Daniel Hon, of Ft. Smith, Ark., for plaintiff in error.

James A. Comer, of Little Rock, Ark. (George F. Youmans, of Ft. Smith, Ark., on the brief), for defendant in error.

Before STONE, LEWIS, and KENYON, Circuit Judges.

KENYON, Circuit Judge.    Parties will be designated as in the trial court.

Plaintiff brought suit in the United States District Court for the Western District of Arkansas on May 23, 1921, alleging:    That it was a corporation organized under the laws of the state of Indiana and authorized to transact business in the state of Arkansas; that defendant on January 1, 1921, issued two warrants to the Joe Lyons Machinery Company for the sums of $1,850 and $2,024.84, respectively, the one for $1,850 payable "out of any money in the treasury appropriated for other expenses of county government," and the one for $2,024.84 payable "out of any money in the treasury appropriated for road building"; that the Joe Lyons Machinery Company on March 30, 1921, transferred these warrants to plaintiff; and that it was entitled to judgment against Scott county, defendant, for the sum of $3,874.84.

Defendant claimed in said suit:    That the warrants sued on were illegal and void; that warrant No. 414, for $1,850, was issued in lieu of original warrants on a call of the county court of Scott county of all outstanding warrants of the county for cancellation, reissue, or classification; that the original warrants for which this one was issued were all drawn upon the appropriation for "other expenses of county government" at a time when only $500 had been appropriated for such purpose, and said original warrants were part of the purchase price of road tractors; that as no appropriation had been made for this purchase the contract was void, and the warrants also were void; that warrant No. 413, for $2,024.84, was issued in lieu of other warrants bearing date January 6, 1918, and issued to the Joe Lyons Machinery Company as part of the purchase price of a road tractor and parts thereof purchased from said company; that the original warrants represented by warrant No. 413 were drawn on the appropriations for road building at a time when no appropriation had been made therefor and no part of any appropriation previously made for road building was wholly or in part unexpended, and consequently the purchase of said road machinery was in violation of the statutes of Arkansas; that the contract for purchase was made by the county judge of Scott county in both instances.

By an amended answer defendant pleaded to the jurisdiction of the court, claiming that plaintiff was the assignee of the Joe Lyons Machinery Company, and that the complaint does not show that its assignor could have sued in the United States court, or that the court would have had jurisdiction in a suit by the assignor on said warrants; that as the assignor would not have had the right to bring suit, the plaintiff's assignee was not entitled to do so.

A jury was waived by stipulation and the case tried to the court. April 8, 1922, the court rendered judgment on all matters and held that defendant was a corporation within the meaning of subdivision

1 of section 24 of the federal Judicial Code (Comp. St. § 991), and that plaintiff was entitled to recover on the warrants sued on, and entered judgment against defendant, Scott county, for the sum of $3,-874.84 and costs. Defendant brings the case here upon writ of error, and the assignments of error raise the questions of jurisdiction and the liability of the county for the warrants sued on.

We consider first the question of jurisdiction. Defendant claims that plaintiff, as assignor of the Joe Lyons Machinery Company, had no legal right to bring this action in the United States court. This is based on section 991, U. S. Compiled Statutes 1918 (Compact Ed.) subd. 1, providing in part as follows:

"No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder, if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made."

[1] It is the contention that the county of Scott is not a corporation within the purview of this act, and that therefore the court is without jurisdiction. The purpose of the act in question was to limit the jurisdiction, undoubtedly, of the federal courts. As expressed by Justice Miller in Wilson v. Knox County (C. C.) 43 Fed. 481, 482:

"The general rule enunciated by the statute is that the federal courts shall not have jurisdiction of a suit by an assignee 'of a promissory note or other chose in action,' when the assignor could not maintain such a suit. The clause, 'if such instrument be payable to bearer and be not made by any corporation,' operates as an exception to the general rule, and gives the federal courts jurisdiction of those suits by assignees, where the action is founded on an obligation, made by a corporation, that is payable to bearer, and is negotiable by mere delivery."

It is apparent that Congress did not intend by this act to prohibit suits in federal courts on instruments made payable to bearer and executed by a corporation. If the instrument is payable to bearer and made by a corporation, action may be brought by the assignee thereof in the federal court, whether or not the assignor could have done so. Independent School Dist. of Sioux City, Iowa, v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364; Lyon County, Iowa, v. Keene Five-Cent Sav. Bank of Keene, N. H., et al., 100 Fed. 337, 40 C. C. A. 391; Citizens' Savings Bank v. City of Newburyport, 169 Fed. 766, 95 C. C. A. 232; New Orleans v. Quinlan, 173 U. S. 191, 19 Sup. Ct. 329, 43 L. Ed. 664. The warrants sued on here were payable to the Joe Lyons Machinery Company, or bearer. This was the same as warrants payable to bearer, and they were payable to plaintiff, not by virtue of any assignment, but by an original and direct promise moving from the maker to the bearer. Thompson v. Perrine, 106 U. S. 589, 1 Sup. Ct. 564, 568, 21 L. Ed. 298. If, therefore, the warrants were issued by a corporation, they were not subject to the restriction of section 991, U. S. Compiled Statutes 1918, hereinbefore referred to.

[2] Jurisdiction depends therefore upon the answer to the question, Was the county of Scott a corporation within the purview of said

act? Section 1 of an act passed by the Arkansas Legislature approved February 27, 1879 (Acts 1879, p. 13) provides as follows:

"That sections 937, 938, 939, 944, 945, 946, 947, 948, 949, and 4,516 of Gantt's Digest of the Statutes of Arkansas, and all laws and parts of laws making counties corporations, and authorizing them to sue and be sued as such, be, and they and each and every of them are hereby repealed."

This act sought to repeal any laws making counties corporations and authorizing them to sue and be sued, although there was a method provided under section 2 of the act as to how judgments might be obtained against the county. Outside of the question raised by this statute, there would be no question as to a county being a corporation within the terms of the federal act. Counties are variously designated as (a) public corporations, Elliott on Roads &· Streets, Sec. 531; Commissioners v. Sellew, 99 U. S. 624, 25 L. Ed. 333; Nash v. El Dorado Co. (C. C.) 24 Fed. 252; Patterson v. Temple, 27 Ark. 202; or as (b) quasi corporations, Dillon on Municipal Corporations, § 35 (5th Ed.); Hamilton County. v. Mighels, 7 Ohio St. 109;. Finch v. Board, etc., 30 Ohio St. 37, 27 Am. Rep. 414; Hamilton County v. Garrett, 62 Tex. 602. They are different and distinguishable from municipal corporations, and have generally a less measure of corporate life.

In the case of Loeb v. Columbia Township Trustees, 179 U. S. 472, 486, 21 Sup. Ct. 174, 180 (45 L. Ed. 280) the Supreme Court held that the words "any corporation" in the act of 1888 include municipal as well as private corporations. If a township is a corporation under that act, certainly a county is one. In Cowles v. Mercer County, 74 U. S. (7 Wall.) 118, 122 (19 L. Ed. 86), it is held that the board of supervisors created by acts of the Legislature of Illinois is a corporation, and the court uses this significant language:

"It is enough for this case that we find the board of supervisors to be a corporation authorized to contract for the county. The power to contract with citizens of other states implies liability to suit by citizens of other states, and no statute limitation of suability can defeat a jurisdiction given by the Constitution."

It has many times been held in the federal courts that warrants such as are here sued upon are choses in action made by a corporation. Jerome v. Commissioners Rio Grande Co. (C. C.) 18 Fed. 873; McLean v. Valley County, Neb. (C. C.) 74 Fed. 389; Board of Commissioners of Kearny County, Kan., v. Irvine, 126 Fed. 689, 61 C. C. A. 607; Lyon County v. Keene Five-Cent Sav. Bank, 100 Fed. 337, 40 C. C. A. 391; Rollins v. Chaffee County (C. C.) 34 Fed. 91; Newgass v. City of New Orleans (C. C.) 33 Fed. 196.

The Supreme Court of Arkansas has in a number of cases given a definition of counties. In Eagle· et al.. v. Beard et al., 33 Ark. 497, counties were designated as of a purely political character, constituting the machinery and agencies by which governmental power was exercised. The court said there that counties were not business corporations for private purposes. In Pulaski County v. Reeve, 42 Ark. 54, it was said by the court that:

The "county is not properly a corporation, but a political subdivision of the state, which for the more convenient administration of justice and for

some purposes of local government, is invested with a few functions characteristic of corporate existence."

In Nevada County v. Dickey, 68 Ark. 160, 56 S. W. 779, counties are referred to as "quasi corporations, possessing no power and incurring no obligations save those especially conferred or imposed by statute." Since the passage of the act referred to as to counties, the Arkansas Supreme Court, in referring to the question of whether or not counties are corporations, in Pine Bluff Transfer v. Nichol, 140 Ark. 320, 215 S. W. 579, has said, referring to Eagle et al. v. Beard et al., 33 Ark. 497, and to Nevada County v. Dickey, 68 Ark. 160, 56 N. W. 779:

"Thus it will be seen that our court recognizes counties to be political corporations or quasi corporations."

This would seem to be the latest, enunciation of the Supreme Court of Arkansas on the subject. Evidently that court does not understand that the Act of February 27, 1879, settles the question of whether or not a county can be a corporation for any purpose.

It may be conceded that the powers of a county are such only as given by the constitution or the Legislature of the state and the implied power necessary to carry these out; that their mission is to aid in performing the functions of the state of which the making and repair of highways is one. All such functions could be taken away by the state, but the mere taking from counties their names, without taking their powers, would be insufficient to defeat federal jurisdiction as to claims properly cognizable in the federal court in suits brought by citizens of another state. The act in question seems to permit counties to do practically everything they could before its passage. They can make contracts and incur liability but if suit be brought in the federal court can claim that such jurisdiction is defeated because the state had passed an act declaring that counties are no longer corporations and that they cannot sue and be sued as such, although provision is made in the act for securing judgment against the county in other ways. In other words, judgment can be secured against them, but they cannot be sued as corporations. The words "as such," used in the act, are quite significant of its purpose.

We think, however, this particular question has been settled by federal decision. In Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 697 (37 L. Ed. 546), this same act of the Legislature was before the Supreme Court of the United States. In that case defendant in the lower court had moved to dismiss on the ground that since the passage of the Act of February 27, 1879, by the Legislature of Arkansas, the county could not be sued or proceeded against in any court, either state or federal or otherwise than provided by said act, and that the Circuit Court did not have jurisdiction. The Supreme Court said:

"If, therefore, the presentation of a demand to the county court under the Arkansas statute is not the commencement of a suit against the county, then, under the rule stated in Delaware County v. Diebold Safe Co., just quoted, the court to which such demand may be carried after allowance or rejection receives and determines it as an original cause. In either case

the suit is so maintainable in the state courts as to be cognizable by original process in a federal court, where the parties have the proper citizenship to confer jurisdiction. Any other view of the subject would prevent citizens of other states from resorting to the federal courts for the enforcement of their claims against counties of the state, and limit them to the special mode of relief prescribed by the Act of February 27, 1879. The jurisdiction of the federal courts is not to be defeated by such state legislation as this."

The court refers there to the fact that this particular state statute was passed after the bonds had been issued, and refers to the act as one "relied on to defeat the jurisdiction of the United States Circuit Court." In Thompson v. Searcy County, 57 Fed. 1030, 1037, 6 C. C. A. 674, 680, the same question as to provision of this statute arose. The court said:

"This proposition is met and overcome by a recent decision of the Supreme Court of the United States in Chicot Co. v. Sherwood, 148 U. S. 529, 13 Sup. Ct. 695, wherein it is held that the statute in question is not adequate to deprive nonresident creditors of a county of their right to sue the county in the national courts, when the amount is sufficient to invoke their jurisdiction."

These cases are sufficient, we think, to show that federal jurisdiction is not defeated by the passage of such an act as the one relied on. The defendant county was a corporation within the purview of subdivision 1 of section 991, U. S. Compiled Statutes, 1918, and the District Court for the Western District of Arkansas properly held that it has jurisdiction of the case.

[3, 4] The question of innocent purchaser is not involved here. The warrants are only evidence of debt, mere orders from the county treasurer to pay the amount specified, and while they are prima facie recognition of the validity of the claim they represent, and where payable to bearer, are transferable by delivery, and the holder can sue in his own name, they are not negotiable instruments in the sense of the law merchant. The person holding them does not become an innocent holder thereof as in the case of negotiable paper. Any one taking these warrants takes them subject to defenses that might be interposed were they held by the original payee. Vale v. Buchanan, 98 Ark. 299, 135 S. W. 848; Mayor v. Ray, 19 Wall. 468, 477, 22 L. Ed. 164; City of Little Rock v. United States, 103 Fed. 418, 423, 43 C. C. A. 261; Thompson v. Searcy County, 57 Fed. 1030, 6 C. C. A. 674; Board of Commissioners of Hamilton County v. Sherwood, 64 Fed. 103, 11 C. C. A. 507. When the original warrants were called in and new ones issued the new ones were subject to any defense applicable to the original. Dillon on Municipal Corporations (5th Ed) 861; Wall v. County of Monroe, 103 U. S. 74, 26 L. Ed. 430.

Two warrants are involved in this case, No. 414, for $1,850, and No. 413, for $2,024.84. Both were issued January 1, 1921, and were to the Joe Lyons Machinery Company or bearer. These were issued to take up other warrants, as provided by the laws of Arkansas. No. 413, in the sum of $2,024.84, was issued in lieu of four separate warrants made on the 6th day of January, 1919, to the Joe Lyons Machinery Company in various sums, to be paid "out of any money in the treasury appropriated for road building." No. 414 was issued to

take the place of 14 warrants, 12 of which bore date November 1, 1917, and 2 January 4, 1918, and aggregated the sum of $1,850, all being payable "out of any money in the treasury appropriated for other expenses of county government." It is contended by the county that both warrants are void and were issued without authority.

We consider No. 413 first. The warrants originally issued, now represented by this one, were for road tractors and represented the purchase price thereof. There are provisions of the Arkansas laws (Crawford & Moses' Digest) as follows:

"Sec. 1976. *Necessity of Previous Appropriation.* No county court or agent of any county shall hereafter make any contract on behalf of the county unless an appropriation has been previously made therefor and is wholly or in part unexpended, and in no event shall any county court or agent of any county make any contract in excess of any such appropriaton made, and the amount of such contract or contracts shall be limited to the amount of the appropriation made by the quorum court." Act March 18, 1879, as amended by Acts 1917, p. 1185, § 3.

"Sec. 1985. *Amount of Appropriations to be Stated—Limit.* The court shall specify the amount of appropriations for each purpose in dollars and cents, and the total amount of appropriations for all county or district purposes for any one year shall not exceed ninety per cent. of the taxes levied for that year." Acts 1879, p. 115, § 7.

Section 1977 makes the county judge, with a majority of the justices of the peace of each county, a quorum court, with power to levy taxes and make appropriations. Under section 1976 the county court could not make a contract unless an appropriation had been previously made and was wholly or in part unexpended. By an amendment to this act in 1917 it was provided that in no event should the county court or any agent of the county make any contract in excess of any such appropriation made.

In the proceedings of the quorum court of October 23, 1918, which is the foundation of warrant No. 413 there appears an appropriation of $25,000 for defraying the expenses of road building in Scott county. A general county tax of five mills on the dollar on real estate and personal property is levied, that being the constitutional limit. Other expenses of county government are appropriated in the sum of $1,000. It is contended by the county that, in view of section 1976 and of section 1985, the levying court could appropriate only 90 per cent. of the current tax levy for the year, and that prior to the appropriation of the $25,000 the quorum court had appropriated more than the 90 per cent. of the current tax levy for the year would produce, together with county funds derived from other sources.

There may be question as to the legality of this warrant, but it does not clearly appear that the action of the quorum court was not sufficient to justify the county judge in making the purchase of the tractor; his action being later approved by the county court issuing the warrant in suit. The appropriation was made, and the contract for the purchase of the tractor did not exceed the amount of such appropriation. Whether the taxes assessed or to be assessed for that year, together with county funds from other sources, would not be sufficient to pay for this particular property, is problematic, and the burden would be on the county having issued these warrants, carrying on their

face the order of the county, to show that they were in fact illegal and void. As far as the record appears, it does not satisfy us that the originals for which warrant No. 413 was issued were illegal.

As to warrant No. 414 the situation is different. This warrant, as we have pointed out, took the place of 14 warrants issued to the Southern Supply Company for the purchase price of another road tractor, and the authority to make the contract by the county court, or by the judge as agent of the county, rests upon the proceedings of the quorum court for the year 1917. There was no appropriation by said court at that time for road work. There was an appropriation of $500 for "such other expenses of county government as allowed by law." Also it was ordered that the sum of three mills on the dollar be levied on all real estate for county road fund for the year 1917; this, however, after it was provided that five mills be levied on all real estate and personal property for general county purposes. This was the limit of the constitutional provision, and more could not be levied. There had been no appropriation for the specific thing. There are implied powers in a municipal or quasi municipal corporation, and the carrying on of road work may be considered as one of these powers, and hence the appropriation for the $500 covering "such other expense of county government as allowed by law" would perhaps be sufficient as a basis for the making of the contract and the issuing of the warrants, provided the $500 appropriated was not exceeded. This contract, however, clearly exceeded such sum, and if section 1985 means anything it means that the agent of the county cannot make a contract in excess of the appropriations made. Before the amendment to the act referred to it had been held by the courts of Arkansas and by the federal courts that where a contract had been made, if there was any appropriation, the contract could exceed the appropriation, but the amendment of 1917 to the original act seems to have been for the particular purpose of preventing that in the future. It seems to us the action in making the contract under these circumstances for the purchase of the tractor was in absolute violation of section 1985 and was void. Were this all, the case would end here, and there would be recovery on warrant No. 413, but not on warrant No. 414.

[5] Another element, however, enters into the case. The tractors purchased by the county, the purchase price being represented by these warrants, were used in the building and repair of roads. It is claimed in the brief of defendant in error that they were used for five years. We think the record would warrant finding that they were used from 1917 until the time of the filing of the answer in 1921, a period of approximately four years. During this time the original warrants, the basis of both of these warrants, were called in by the county court, and a new order made in the nature of a judgment for the issuance of the warrants in suit. This was in January, 1921. No voice was then raised in protest. There was no offer to return the tractors. Some of the warrants issued at the same time have been accepted by the county for taxes. Under such circumstances, can the county escape liability on the plea that the contracts were made without authority? These contracts were not ultra vires. There was the general power in the coun-

ty to attend to road matters. It could have made a contract to purchase road machinery, provided a proper appropriation had been made and the provisions of the law complied with. It was within its power as a county so to do; if not express, at least implied. Ottawa v. Carey, 108 U. S. 110, 2 Sup. Ct. 361, 27 L. Ed. 669.

[6] If the contract was one beyond the power of a county under any circumstances to make, then the keeping and using of the machinery would not constitute an estoppel, and the act of the county under such circumstances could not be ratified. The rule is laid down by Dillon on Municipal Corporations, § 797, as follows:

"A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the scope of the corporate powers, but not otherwise." City of Ft. Scott, Kan., v. W. G. Eads Brokerage Co., 117 Fed. 51, 54 C. C. A. 437; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 59, 11 Sup. Ct. 478, 35 L. Ed. 55; Concord v. Robinson, 121 U. S. 165, 7 Sup. Ct. 937, 30 L. Ed. 885; Marsh v Fulton County, 77 U. S. (10 Wall.) 676, 684, 19 L. Ed. 1040; Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070.

It has been held that under some circumstances a corporation can deny its power to act. Daviess County v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026; Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005; Daniels v. Tearney, 102 U. S. 415, 420, 26 L. Ed. 187. Litchfield v. Ballou et al., 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132, is a case where bonds were issued contrary to provisions of the state Constitution. The moneys secured by the bonds were expended by the city in erecting waterworks. An attempt was made to have the amount imposed as a lien upon the public works. The court held that the holders of the bonds and agents of the city are participes criminis in the act of violating the constitutional prohibition and refused to enter a decree requiring the city to return the money. Here there was no power in the city to issue the bonds.

[7] In Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 48, 11 Sup. Ct. 478, 484 (35 L. Ed. 55), the court says:

"The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts."

In Daviess County v. Dickinson, 117 U. S. 657, 664, 6 Sup. Ct. 897, 900 (29 L. Ed. 1026), the court said:

"The certificate of the judge of the county court upon the back of each bond, that it was issued as authorized by the statute and by an order of the county court in pursuance thereof, cannot estop the county to deny that the particular bond is void because the county court, at the time of issuing it, had exhausted the power conferred by the act of the legislature and the vote of the people."

And the court held that payment of interest on all the bonds would not amount to a ratification of bonds issued beyond the lawful limit; that the county could not ratify what it could not have authorized.

Many more cases could be cited to show that, where the courts have refused to apply the doctrine of estoppel to counties or municipal

corporations, it was where the corporation had no power under any circumstances to make the contracts or issue the bonds or warrants. Such, we think, is the well-recognized law.

[8] On the other hand, the well-established rule as to private corporations is that, when a contract is made by an agent of a corporation in its behalf and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it may be presumed to have authorized or ratified the contract by the agent. Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, 381, 9 Sup. Ct. 770, 33 L. Ed. 157; Gold-Mining Co. v. National Bank, 96 U. S. 640, 24 L. Ed. 648; Pneumatic Gas Co. v. Berry and another, 113 U. S. 322, 5 Sup. Ct. 525, 28 L. Ed. 1003; Union Pac. Ry. Co. et al. v. Chicago, R. I. & P. Ry. Co., 51 Fed. 309, 327, 2 C. C. A. 174; Bank of Columbia v. Patterson's Administrator, 7 Cranch, 299, 3 L. Ed. 351; United States v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552. As to municipal or quasi municipal corporations the same principle applies, although the ratification may require somewhat different proof. The whole doctrine is well stated in Jacksonville, Mayport, Pablo Railway & Navigation Co. v. Hooper, 160 U. S. 514, 524, 16 Sup. Ct. 379, 383 (40 L. Ed. 515), where the court said:

"We do not seek to relax but rather to affirm the rule, laid down by this court in Central Transportation Co. v. Pullman's Car Company, above cited, that 'a contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect —the objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. Such a contract cannot be ratified by either party, because 'it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.' 139 U. S. 59, 60. But we think the present case falls within the language of Lord Chancellor Selborne, in Attorney General v. Great Eastern Railway, 5 App. Cas. 473, 478, where, while declaring his sense of the importance of the doctrine of ultra vires, he said: 'This doctrine ought to be reasonably, and not unreasonably, understood and applied, and that whatever may fairly be regarded as incidental to, or consequential upon, those things which the legislature has authorized, ought not, unless expressly prohibited, to be held, by judicial construction, to be ultra vires.' In the application of the doctrine the court must be influenced somewhat by the special circumstances of the case."

The application of similar doctrines to such corporations as cities and counties is stated in Pimental v. City of San Francisco, 21 Cal. 362, quoted with approval by the Supreme Court of the United States in Chapman v. County of Douglas, 107 U. S. 348, 357, 2 Sup. Ct. 62, 70 (27 L. Ed. 378), as follows:

"The city is not exempted from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her it is her duty to restore it, or if used to render an equivalent therefor, from the like obligation. Argenti v. San Francisco, 16 Cal. 282. The legal liability springs from the moral duty to make restitution."

Likewise in Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659, a recovery was allowed for the value of the benefits conferred upon the municipal corporation notwithstanding the contract to pay in bonds was illegal and void. The court said (96 U. S. at page 350, 24 L. Ed. 659):

"It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law."

The theory of these cases is that a corporation, such as a county or city, should not be permitted to stultify itself by accepting property for necessary use, use it for years until it is worn out, and then refuse to pay on the ground of a lack of authority to make the contract. A municipal corporation, which has enjoyed the fruits of a contract fairly made, cannot, when called to account, deny the corporate power to make it. Warner v. City of New Orleans, 87 Fed. 829, 31 C. C. A. 238; City of St. Louis v. The Maggie P. (C. C.) 25 Fed. 204. The doctrine of want of power cannot be used to aid a party in perpetrating a wrong and injustice. Stone Co. v. Brick Mfg. Co., 149 Iowa, 141, 147, 126 N. W. 190. Ratification of an unauthorized act of a corporation done for its benefit can be proven by conduct or circumstances. In re Quality Shoe Shop, Inc. (D. C.) 212 Fed. 321; Thompson on Corporations, vol. 2, § 1407; Topolewski v. Plankington Packing Co., 143 Wis. 52, 126 N. W. 554.

The doctrine of estoppel is one of fundamental justice. Its application must depend upon the circumstances of each particular case, and courts have gone a long way in applying it to prevent manifest injustice and wrong. We refer to some of such instances—applied when there was an attempt to question the constitutionality of a statute under which contracts had been made, City of Mt. Vernon v. State, 71 Ohio St. 428, 73 N. E. 515, 104 Am. St. Rep. 783, 2 Ann. Cas. 399; applied in Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760, where the municipal corporation was held estopped as against a bona fide purchaser for value of bonds from asserting that the bonds were not issued upon a petition of two-thirds of the resident freeholders of the city, and it was held that the bona fide purchaser of the bonds was not charged by the recitals in the same with notice that they were issued in pursuance of an invalid act; again, in Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552, applied as against the city of Santa Cruz to deny the truth of recitals in certain bonds which stated they were issued in pursuance of the act of California, and other requisites. There the question of bona fide purchasers without notice arose.

Again in Chaffee County v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040, the county was held estopped to deny certain things recited in the bonds, and the Supreme Court in Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552, declined to overrule Chaffee Co. v. Potter. In Slayton & Co. v. Panola County, Tex. (D. C.) 283 Fed. 330, the county was estopped to assert invalidity of warrants, and the court there says (page 335):

"In using the power thus delegated to them, the commissioners were transacting the routine business, or exercising what some of the courts term the 'proprietary powers' of the county. Such procedure is different from the exercise of governmental functions, or the disposition of those larger questions that are determined by the public consent or intervention. The authorities are practically unanimous that, as regards such routine or business engagements, the doctrine of estoppel applies to municipal corporations just as to individuals. Trust Co. v. Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Kneeland v. Gilman, 24 Wis. 39; Macon County v. Shores, 97 U. S. 279, 24 L. Ed. 889. The doctrine itself, as applied in this case, would have no relation to the validity or invalidity of the act of the commissioners. It has to do with whether such act should prevent the county from asserting the invalidity. It is called estoppel, 'because a man's own act or acceptance stoppeth or closeth his mouth to allege or plead the truth.' "

In Warner v. City of New Orleans, 87 Fed. 829, 31 C. C. A. 238, the same doctrine of estoppel was invoked successfully as against the city of New Orleans, where warrants had been drawn against the drainage fund and it was held that the city was estopped to deny their existence.

The Supreme Court of Arkansas has, we think, with some exceptions, followed the line of demarcation laid down in the cases we have referred to, to wit: That if there were no power in the county or municipal corporation under any circumstances to make the contract, then the county or municipal corporation was not estopped to deny the illegality of the contract, even had property been received thereunder and kept; but that where the authority to make the contract was in the county or the municipal corporation, and the same had been improperly exercised, so that the action was void, the county could not receive property under such contract, use it for a considerable period of time and deny the legal authority to make the purchase. In the following cases application of the doctrine of estoppel was denied: Wiegel v. Pulaski County, 61 Ark. 74, 32 S. W. 116; Luxora v. Jonesboro, Lake City & Eastern R. R. Co., 83 Ark. 275, 103 S. W. 605, 13 L. R. A. (N. S.) 157, 119 Am. St. Rep. 139; Johnson County v. Jamison, 85 Ark. 609, 109 S. W. 1025; First National Bank of Waldron v. Whisenhurst, 94 Ark. 583, 127 S. W. 968; Monroe County v. Brown, 118 Ark. 524, 177 S. W. 40.

The strongest case in Arkansas, where the doctrine of estoppel was applied, is International Harvester Co. of America v. Searcy Co., 136 Ark. 209, 206 S. W. 312, where it was held (syllabus):

"Although the county court cannot lawfully make a contract for the purchase of road machinery until an appropriation has been made for that purpose, yet where an appropriation for such purpose was made after the purchase and the machinery was delivered to the county and kept by it, it cannot defeat a recovery for the purchase money thereof."

This would indicate that there could be ratification of an unauthorized contract by an appropriation later made, and that is the only difference between that case and the case at bar. The reasoning of this case is in line with fundamental justice and conforms to the language of the Supreme Court of the United States in Marsh v. Fulton Co., 77 U. S. (10 Wall.) 676, 684, 19 L. Ed. 1040, as follows:

"The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

To the same effect are Springfield Furniture Co. v. School Dist. No. 4 of Faulkner County, 67 Ark. 236, 54 S. W. 217; Howard County v. Lambright, 72 Ark. 330, 80 S. W. 148; School Dist. No. 47 v. Goodwin, 81 Ark. 143, 98 S. W. 696; Forrest City v. Orgill, 87 Ark. 389, 112 S. W. 891; Greenberg Iron Co. v. Dixon, 127 Ark. 470, 192 S. W. 379.

The quorum courts could have made, within the constitutional limit, the appropriations and levies to have raised the money for this road machinery. The subject-matter of such contracts as these would therefore in no way be foreign to the purposes for which the county was created. The county procured from the dealers this machinery. It was used for county purposes for approximately four years. Where a county, as in this case, has kept and used property for four years, even if purchased under a contract which exceeded the authority of the officer making it, but which could have been made by the county if certain legal requisites had been complied with, every principle of fair dealing would be violated by permitting a repudiation of the debt under such circumstances. The county has had the benefit of this road machinery. It should pay. It is not in a position to claim there was no authority to issue the warrants.

As recovery could have been had, in our judgment, on warrant No. 413, regardless of the question of estoppel, and as such doctrine applies to the defenses to warrant No. 414, the judgment rendered by the court was in accord with the evidence and the law, and the same is affirmed.